Thelma G. **THOMPSON**, Appellant,

v.

Sylvan **MAZO**, Appellee.

No. 22268.

United States Court of Appeals, District of Columbia Circuit.

Argued June 27, 1969.

Decided Jan. 12, 1970.

Mrs. Florence W. Roisman, Washington, D. C., for appellant. Mr. Jerry S. Byrd, Greenville, S. C., was on the brief for appellant.

Mr. Herman Miller, Washington, D. C., for appellee.

Mr. Ralph J. Temple, Washington, D. C., filed a brief on behalf of the American Civil Liberties Union Fund, as amicus curiae, urging reversal.

Before BAZELON, Chief Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

D.C.Code § 16–1504 (1967) provides that a defendant who pleads title in a possessory action in the Court of General Sessions must enter into an "undertaking, with sufficient surety" before the cause will be certified to the District Court, which alone is empowered to try the issue of title. The question presented by this case is whether the "undertaking" must be in the form of a lump-sum bond regardless of the defendant's ability to provide it, and may not be in any other form which the defendant is able to provide and which will provide

"sufficient surety" for the plaintiff.[1] The Court of General Sessions required a lump-sum bond and the District of Columbia Court of Appeals affirmed. We reverse and remand for further proceedings.

### I.

Appellant and her husband purchased a house and lot in October 1957. To secure payment on the purchase price, they placed two deeds of trust on the property. Subsequently, appellant's husband, allegedly without appellant's knowledge or consent, made a third deed of trust to secure a $7500 indebtedness with a construction company.[2] This note was negotiated to a mortgage company and a foreclosure sale was held, again allegedly without notice to appellant. At this sale in May 1966, appellee purchased the property for $3500, subject to the first and second deeds of trust. In June, appellant's family received from appellee a notice to vacate their home within thirty days. When they failed to do so, appellee filed suit for possession on August 2 in General Sessions Court, claiming that appellant and her husband were tenants at will,[3] whose tenancy had been terminated by the notice to quit.[4] On August 16, appellant filed a plea of title, alleging that her signature had been forged on the promissory note and the deed of trust under which appellee claimed title. The plea was noted and the cause was ordered certified to the District Court, conditioned upon appel-

lant's posting a $3000 bond by August 22.[5] On that date, appellant filed a Motion in Opposition to Strike Plea of Title, stating that because of her poverty she was unable to post the bond. On August 26, the General Sessions judge denied appellant's motion and struck her plea of title for failure to post the bond. Three days later, judgment for possession was entered for appellee in the Court of General Sessions in the summary proceeding.

Appellant noted her appeal of this judgment to the District of Columbia Court of Appeals on September 1, 1966. Shortly thereafter, while the appeal was pending, appellee took possession of the house. Since appellant had to provide alternative shelter for her family, she discontinued her monthly payments on the first and second deeds of trust; since his title was in dispute, appellee also failed to make these payments. Hence, the holder of the second deed of trust foreclosed, and appellee lost title to the property. On August 8, 1968, the District of Columbia Court of Appeals affirmed the trial court's order awarding possession. Appellant then filed in this court a petition for allowance of an appeal, which was granted on October 21, 1968.

### II.

Appellee argues that we should not reach a decision on the merits because of a District Court judgment involving these parties. These are the

---

1. Appellant filed an affidavit in the Court of General Sessions in support of her claim of indigency. For purposes of this appeal, we presume that on remand she will be able to satisfy the trial court that she was financially unable to post a lump-sum bond. *Cf.* the local and federal *in forma pauperis* statutes, D.C.Code § 15–712 (1967) and 28 U.S.C. § 1915(a) (1964). Adkins v. E. I. Dupont De Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), interprets the latter not to require absolute destitution but merely an affidavit "which states that one cannot because of poverty 'pay or give security for the costs * * * and still be able to provide' himself and de-

pendents 'with the necessities of life.' " 335 U.S. at 339, 69 S.Ct. at 89.

2. Appellant alleges that forgery invalidates these instruments. *Cf.* American Wholesale Corp. v. Aronstein, 56 App. D.C. 126, 10 F.2d 991 (1926).

3. D.C.Code § 45–822 (1967).

4. D.C.Code § 45–903 (1967).

5. Either a money bond in the sum of $3000 or one posted by a professional bondsman. Appellant's motion against striking her plea set forth that as a practical matter no bondsman would undertake to indemnify her without cash or other collateral valued at $3000.

pertinent circumstances. On July 28, 1966, after receiving appellee's notice to quit, appellant filed a suit *in forma pauperis* in the District Court for reconveyance of the property, naming appellee and others as defendants. At the same time, appellant filed a motion for a temporary restraining order and preliminary injunction against the prosecution by appellee of any suit for possession in General Sessions. On August 2, before the District Court acted, appellee commenced the action which is on appeal here. Therefore, on August 26, appellant's motion for injunctive relief was denied by the District Court because

> there is pending in the District of Columbia Court of General Sessions, Landlord and Tenant Branch, a possessory action in which plaintiff [appellant] has filed a plea of title, and upon her posting bond in said action, plaintiff would be entitled, as of right, to a stay of eviction, which is sought by her present motion.

However, on the same day, the General Sessions judge struck appellant's plea of title for her failure to post the bond. On March 14, 1967, while the General Sessions judgment was on appeal, the District Court granted appellee's motion to dismiss the suit for reconveyance as moot.

Appellee cites appellant's failure to seek review of the District Court's dismissal of her suit as a bar to this appeal. The doctrine of judicial finality protects the District Court's disposition of a claim from collateral attack in the District of Columbia Courts. In the present case, however, the suit in the District Court was the collateral cause. The Court of General Sessions was the primary arena chosen by the parties. The District Court recognized this in its order of August 26. Appellee chose his forum and derived benefits from that choice, and appellant pursued the proper steps to appeal the judgment rendered in that forum. Hence, the decision of the District Court, rendered out of deference to the action pending in the court of appellee's choice, does not preclude this appeal, even though it would have involved, had it reached the merits, the same questions which appellant sought to have litigated by pleading title in the possessory suit.

### III.

■ The challenged statutory interpretation led to a harsh result here. Since jurisdiction to try title rests exclusively with the District Court, the consequence of striking appellant's plea and refusing to certify the case to the District Court was to deprive appellant of the benefits for which § 1504 was designed.[6] The lack of a hearing on the merits is troublesome to say the least.[7]

---

6. § 1504 contemplates a single, expeditious trial in which the determination of who has "title" will underlie the decision on who should take "possession". This joinder of causes assures an opportunity to be heard at "a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1964); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). The possessory action in General Sessions is a summary proceeding and can be completed within a short time. On the other hand, a determination of title in the District Court may require many months, both because of the nature of the claim and because of the court's lengthy backlog of cases. Therefore, a person who is relegated to the District Court to litigate title while a possessory

action is being brought against him faces the unpleasant prospect of being evicted long before his title claim is settled and the property reconveyed to him. This controvenes the legislative policy embodied in § 1504 and its predecessors back to the Act of July 4, 1864, ch. 243, § 3, 13 Stat. 384, which abrogated the harsh common law practice by making the filing of a plea of title in a summary possessory proceeding a matter of right. *Cf.* Scheve v. Hollins, 131 U.S.App.D.C. 160, 162 n. 1, 403 F.2d 566, 568 n. 1 (1968).

7. It has long been established beyond cavil that notice and hearing are the essence of "due process of law," *e. g.*, Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915), and even notice of a legal action is vitiated if

The issue is complicated where, as here, this deprivation is occasioned by a litigant's inability to post the required bond.[8] Due process[9] and equal protection[10] considerations loom on the horizon when the diminution of rights is based on an economic classification not required by the ends to be served.[11]

The District of Columbia Court of Appeals upheld the trial court's view that protection of the plaintiff's interest[12] required the "undertaking"

---

8. Appellant analogizes this case to Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We see no reason to turn to *Shelley*, which forbids courts from enforcing private agreements which contravene public policy. Appellant's challenge in this court is not to an illegal practice on appellee's part but directly against a specific statutory provision, the operative effect of which is to deny her a hearing on her contentions.

9. The state may not afford a person less than a fair hearing because his poverty precludes his retaining counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Cf.* Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Justice Roberts observed that "the Fourteenth Amendment extends the protection of due process to property as well as to life and liberty * * *." Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

10. Equal protection forbids economic barriers in the criminal process, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891

---

one is denied the opportunity to be heard. Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914 (1876). The particularly harsh effects on poor persons of even a *delay* in hearing was emphasized by the Supreme Court last term in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The Court held that a state prejudgment garnishment statute violated due process because, "in the interim the wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have." *Id.* at 339, 89 S.Ct. at 1821. The statute permitted the debtor to post a bond and secure release of the garnished property, but the Court did not find that grounds for upholding the law. In the present case, the deprivation of a hearing is for all intents permanent, not merely pendente lite as in *Sniadach*.

(1956), and in the exercise of fundamental liberties such as the rights to vote, Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), and to petition for habeas corpus, Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). Allegations that the federal government has failed to display equal respect and concern for the rights of one group of citizens (*cf.* Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966)) are measured against the "pledge of protection of equal laws," Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886) which is implied in the fifth amendment, Fernandez v. Meier, 408 F.2d 974 (9th Cir. 1969); United States v. Fallon, 407 F.2d 621 (7th Cir.), cert. denied, 395 U.S. 908, 89 S.Ct. 1749, 23 L.Ed.2d 220 (1968). *Cf.* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968).

11. The state *can* set certain conditions for access to the courts. For example, it may screen out frivolous or dilatory actions, provided that the mesh of the screen is open enough not to snare those with valid claims whose only failing is penury. Another requirement of § 1504 and of General Sessions Landlord and Tenant Rule 5, with which appellant did comply, is that the plea of title be under oath and "accompanied by a certification that it is filed in good faith and not for the purpose of delay." *Cf.* 28 U.S.C. § 1915(a) (1964); Tate v. United States, 123 U.S.App.D.C. 261, 359 F.2d 245 (1966). Any regulation which uses a financial hurdle simply to discourage suits, some of which might be taken in bad faith, is open to serious constitutional challenge, since it would appear to operate from the doubtful premises that the rich are less likely than the poor to maintain frivolous actions. *Cf.* Tate v. United States, *supra*.

12. Successful plaintiffs are entitled to recover on the undertaking for property damage or loss of rent. Scheve v. Hollins, *supra* note 6.

to be a lump-sum bond without regard to whether the defendant had the financial ability to provide it.[13] We think, however, that the words of the statute [14] do not impose the strict requirement of a "lump-sum" bond in all circumstances.[15] The statute provides in pertinent part:

> When * * * the defendant pleads title to the premises, * * * under oath, and enters into an undertaking, with sufficient surety, to be approved by the court, to pay all intervening damages and costs and reasonable intervening rent for the premises, the court shall certify the proceedings to the United States District Court * * *.[16]

■■ An "undertaking" need not be a money bond.[17] It can as well be an agreement for monthly payments in escrow.[18] The parties may calculate the proper amount of payments, under the court's supervision.[19] Factors to be considered are a reasonable rental for the premises, possible damages and costs,[20] the defendant's income, and the amount of payment which are presently being made to other mortgagees. The guiding principle for the court is, of course, to arrive at a reasonable monthly payment which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent. To further protect the plaintiff's interests, the court may exercise its discretion over the "sufficient surety," [21] by requiring the defendant to stipulate that he will confess judgment in the possessory action

13. The General Sessions ruling was consistent with prior decisions of the District of Columbia Court of Appeals, e. g., Watwood v. Morrison, 193 A.2d 71 (D.C.App. 1963) ; Sutton v. Jones, 181 A.2d 470 (D. C.Mun.App.1962).

14. Courts properly assume that Congress has drawn a statute so as to avoid a "constitutional danger zone." Yates v. United States, 354 U.S. 298, 319, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

15. The parties disagree whether the Court of General Sessions was properly presented with the alternative method of fulfilling the "undertaking" requirement which this opinion approves. We find this dispute of no moment, however, since our interpretation is consistent with the statute and avoids an unnecessary constitutional judgment. United States v. Jin Fuey Moy, 241 U.S. 394, 36 S.C. 658, 60 L.Ed. 1061 (1916) ; Edwards v. Habib, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968).

16. D.C.Code § 16–1504 (1967) ["Certification to District Court upon plea of title; undertaking"].

17. A bond, when required by or referred to in this Code, means an obligation in a certain sum or penalty, subject to a condition, on breach of which it is to become absolute and enforceable by action.

An undertaking means an agreement entered into by a party to a suit or proceeding, with or without [sufficient] sureties, upon which a judgment or decree may be rendered in the same suit or proceeding against the party and his sureties * * *.
D.C.Code § 28–2501 (1967).

18. Or, if rental payments are currently being made to the plaintiff, they could continue, See Edwards v. Habib, supra note 15.

19. In the instant action, the parties agreed that $150 was a reasonable monthly payment; it was on this basis that the court set the $3000 bond.

20. "Costs" might be excluded from the calculation of a monthly payment by analogy to federal law (since the plea of title certifies the action from a "state" to a federal court). 28 U.S.C. § 1915 has been held to relieve indigent defendants of the requirement of a bond covering "costs," 28 U.S.C. § 1446(d), needed to remove an action to a district court. Pasquarella v. Santos, 416 F.2d 436 (1st Cir., Oct. 6, 1969).

21. The term "surety" is used to refer both to a person who guarantees an undertaking and to some security for an undertaking. See Dowling v. Buckley, 27 App. D.C. 205, 208 (1906).

should he default without good cause.[22] It is an impermissible application of the statute for a court to decline to provide an approach like that set forth above and instead to insist on a money bond beyond the capability of the defendant. We express no opinion on the difficult question of what the statute requires of a defendant who is financially unable to enter into an "undertaking" with surety sufficient to protect a plaintiff's legitimate interests.

 We now take up appellee's contention that the case is moot because appellant's possession cannot be restored, the property in dispute being owned by a person, not a party herein, who acquired title on the foreclosure of the second deed of trust. However, the judgment before us may have collateral consequences [23] affecting appellant's liability for rent during the period of her occupancy [24] and appellee's liability for rents collected thereafter.[25]

We think the interests of justice will be preserved if we confine our action to reversing the judgment of the District of Columbia Court of Appeals with instructions to remit the case to the Court of General Sessions for further order of that court—perhaps a determination that dismissal can be ordered without substantial possibility of injury to either party, perhaps a provision for a protective order or formal disclaimer to ensure that result, or perhaps a determination that, should there be an enlargement of the pleadings with respect to damage claims, there is a live controversy which warrants setting the case for trial.

So ordered.

22. *See* Costen v. Buschow, 213 A.2d 759 (D.C.App.1965) in which such an agreement was approved by the court.

23. Sibron v. New York, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *Cf., e. g.,* Powell v. McCormack, 395 U.S. 486, 495-500, 89 S.Ct. 1944, 23 L.Ed. 2d 491 (1969) ; Bond v. Floyd, 385 U.S. 116, 128, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966).

24. *See* Bess v. David, 140 A.2d 316 (D.C. Mun.App.1958). Appellee's counsel represented during oral argument in this court that appellee did not intend to pursue any possible damage claims against appellant.

25. Moreover, serious questions concerning the availability of the title defense are presented which affect all persons financially unable to post bond.