Muhammad A. MAHDI, Appellant,

v.

PORETSKY MANAGEMENT,
INC., Appellee.

No. 79–1011.

District of Columbia Court of Appeals.

Argued Sept. 18, 1980.

Decided July 20, 1981.

Roy Pearson, for appellant.

Susan S. Magazine, Washington, D. C., for appellee.

Before KERN, MACK and PRYOR, Associate Judges.

PER CURIAM:

On this appeal from a judgment of possession granted to landlord Poretsky Management, Inc., appellant argues that his Fifth Amendment rights have been violated. He concedes that possession was granted for his failure to comply with an order for protective payments, but argues that because the inability to comply was due to his indigency, the trial court unconstitutionally deprived him of due process by disposing of the claim on the merits without a hearing on the merits.

While this appeal has been pending in this court, the trial court in the case of *Arthur E. Morrisette Real Estate v. Hunt,* 109 D.W.L.R. 901 (No. L&T 23841–81, April 8, 1981) has issued a comprehensive *Memorandum Opinion and Order*[1] addressing the issue of whether it has the authority to strike a tenant's pleading for failure to make one or more payments required by a protective order. In that memorandum the trial court notes that, despite the fact that thousands of protective orders are entered each year, there is little appellate precedent to guide the trial judge when faced with the constitutional implications attendant to a tenant's failure to pay.[2] Finding the reasoning of the author of the *Morrisette*

Memorandum to be persuasive, we are adopting his memorandum, in part, as our own in the instant case, and thus providing the necessary appellate precedent for the trial court to grant the landlord possession when the tenant fails to comply with the protective order. We affirm the judgment in the instant case upon the grounds stated in *Morrisette* as follows:

\*     \*     \*     \*     \*     \*

The issuance of a protective order requiring a tenant to pay an amount equal to the agreed upon monthly rent, or sometimes a lesser amount, into the registry of the Court has become the norm rather than the exception in the Landlord and Tenant Branch. See *Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 381, n.67, 428 F.2d 1071, 1083 (1970), *cert. denied* 400 U.S. 925 [91 S.Ct. 186, 27 L.Ed.2d 185] (1970), *Bell v. Tsintolas Realty Co.,* 139 U.S.App.D.C. 101, 430 F.2d 474 (1970); *McNeal v. Habib,* 346 A.2d 508 (D.C.App.1975); and see *Management Partnership, Inc. v. Garris,* —— D.W.L.R. ——, L&T No. 97570–79 (Super.Ct.D.C.) decided March 23, 1981).

\*     \*     \*     \*     \*     \*

Although protective orders are entered in the thousands every year, there remains little in the way of reported appellate precedent to guide the trial judge with respect to the appropriate remedy, if any, where a tenant fails to make one or more of the required payments into the registry. The two decisions by the United States Court of Appeals which came closest to a discussion of the issue are inconclusive [*see Blanks v. Fowler,* 147 U.S.App.D.C. 215, 455 F.2d 1283 (1971) and *Thompson v. Mazo,* 137 U.S.App.D.C. 221, 421 F.2d 1156 (1970).] [Footnote omitted.]

\*     \*     \*     \*     \*     \*

In *Hovey v. Elliott,* 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215] (1897), the Supreme Court held that an order of a District of Columbia court striking the defendant's answer for failing to make a required pay-

---

1. The author of the *Morrisette* opinion is the Honorable Frank E. Schwelb.

2. *See,* however, *Dameron v. Capitol House Associates Limited Partnership,* D.C.App., 431 A.2d 580 (1981).

ment into the registry of the court deprived the defendant of his property without due process of the law. The scholarly opinion for the Court by the first Mr. Justice White included an exhaustive recapitulation of the pertinent authorities and a ringing articulation of the right to be heard as being at "the foundation of all well ordered systems of jurisprudence." 167 U.S. at 414 [17 S.Ct. at 843.] . . .

The decision in *Hovey* was modified * to some degree in *Hammond Packing Company v. Arkansas*, 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530] (1909). In that case, the Supreme Court ruled that a state court may, consistently with the Due Process Clause of the Fourteenth Amendment, strike the answer of a defendant who has refused to produce documents in conformity with a pretrial order. The Court distinguished *Hovey* as follows:

---

* The Supreme Court itself described *Hammond* as a "substantial modification" of *Hovey* in *Societe Internationale v. Rogers*, 357 U.S. 197, 209 [78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255] (1958).

*Hovey v. Elliott* involved a denial of all right to defend as a mere punishment. This case presents a failure by the defendant to produce what we must assume was material evidence in its possession, and a resulting striking out of an answer and a default. The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer to be gotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause. In a sense, of course, the striking out of the answer and default was a punishment, but it was only remotely so, as the generating source of the power was the right to create a presumption flowing from the failure to produce. The difference between mere punishment, as illustrated in *Hovey v. Elliott*, and the power exerted in this, is as follows: In the former, due process of law was denied by the refusal to hear. In

this, the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense.

212 U.S. at 350–51 [29 S.Ct. at 379–80]. The Court took pains to emphasize, however, that the defendant had not been penalized "for a failure to do that which . . . may not have been within its power to do," and that a *bona fide* effort to comply with the order and a reasonable showing of inability to do so would have been sufficient to protect the defendant's right to defend the suit. 212 U.S. at 347 [29 S.Ct. at 378].

In *Societe Internationale v. Rogers* [357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)], (the famous *Interhandel case*), the Court of Appeals had affirmed an order dismissing an action because of the plaintiff's failure to produce documents as required by a pre-trial discovery order. The plaintiff contended that he was precluded by the criminal laws of Switzerland from making some of the documents available. The Court held that Rule 37 of the Federal Rules of Civil Procedure makes no meaningful distinction between failure and refusal to comply with a discovery order, and that willfulness and good faith are therefore relevant only to the selection of the appropriate remedy for non-compliance. The Court expressed the view that *Hovey* and *Hammond*

leave open the question whether Fifth Amendment due process is violated by the striking of a complaint because of a plaintiff's inability, despite good-faith efforts, to comply with a pretrial production order.

357 U.S. at 210 [78 S.Ct. at 1095]. The Court concluded that

in view of the findings in this case, the position in which petitioner stands in this litigation, and the serious constitutional questions we have noted, we think that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial order when it has been established that

failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

357 U.S. at 212 [78 S.Ct. at 1096]. [Footnote omitted.] [*See also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639 [96 S.Ct. 2778, 49 L.Ed.2d 747] (1976).]

\* \* \* \* \* \*

In the Court's view, the critical question here presented is whether *Hovey,* as modified by *Hammond,* preserves the right of a tenant who is unable to make the payments required by a protective order to continue to live, rent free, on the landlord's premises pending the adjudication of the controversy. The Court thinks that this question is fundamentally different from that presented in *Hovey,* and that *Hovey* does not control.

It is surely indisputable that a tenant's right to remain on the landlord's premises is dependent on his payment of rent. See D.C.Code 1973 §§ 16–1501 *et seq.,* 45–901 *et seq.; Lindsey v. Normet,* 405 U.S. 56 [92 S.Ct. 862, 31 L.Ed.2d 36] (1972). Prior to *Brown v. Southall Realty Co.,* 237 A.2d 834 (D.C.App.1968) and *Javins,* the landlord's right to recover possession where the tenant failed to pay his rent was, for all practical purposes, absolute, and a tenant could avoid eviction only by tendering all rent due and owing, together with interest and costs. *Trans-Lux Radio City Corp. v. Service Parking Corp.,* 54 A.2d 144 (D.C.Mun.App. 1947); *National Capital Housing Authority v. Douglas,* 333 A.2d 55 (D.C.App.1975). Since *Javins* and *Brown,* the amount of rent due may be abated, but no tenant can remain in possession unless he pays the abated rent, inability to pay rent due to poverty or lack of funds has never been, and is not now, a defense to a possessory action based on nonpayment. Judgments of possession are routinely and summarily issued in the Landlord and Tenant Branch where a tenant is unable to pay, even under circumstances which would make any humane judge wince and grit his teeth. To put it in the vernacular, if you cannot pay the rent, you cannot stay on in the landlord's apartment. It is just about as simple as that.

Proceedings in the Landlord and Tenant Branch are of a summary nature, and time is of the essence. In *Mendes v. Johnson,* 389 A.2d 781 (D.C.App.1978), our Court of Appeals held that the availability of

a summary procedure whereby a landlord could quickly reacquire possession from a defaulting tenant with the aid of judicial process

justified the abrogation of the common law right of self-help and the rejection of precedents holding that such right had been preserved. *Accord: Lindsey v. Normet, supra,* 405 U.S at 71 [92 S.Ct. at 873] (1972) (Oregon's unlawful entry and detainer statute enacted "to alter the common law and obviate resort to self-help and violence.")

As previously noted at pp. 1086–1088, *supra,* the recognition of the *Brown* and *Javins* defenses, together with the availability of jury trials, significantly impaired the summary character of actions for possession for non-payment of rent. Protective orders requiring prospective payments into the registry were devised in order to preserve some reasonable balance between the rights of landlords and tenants. If no such payments were required, the landlord would be compelled to permit a tenant who does not pay rent to remain on his premises for a substantial period, with little or no assurance that any delinquency would be corrected even if he were to prevail on the merits. The payment of funds into the registry restores some measure of balance, for it assures the availability to a landlord whose position is meritorious, at the conclusion of the litigation, of at least some of the rent that was due him. [Footnote omitted.]

In *Lindsey v. Normet, supra,* the Supreme Court upheld in pertinent part the constitutionality of an Oregon statute which provided, among other things, that possessory actions must be tried within six days of the service of the complaint unless the tenant posted security for accruing rent, and that defenses pertaining to the condition of the premises could not be asserted. [Footnote omitted.] The Court observed that

There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rent agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute. We think Oregon was was well within its constitutional powers in providing for rapid and peaceful settlement of these disputes.

405 U.S. at 72–73 [92 S.Ct. at 873–874]. The Court rejected the contention that the right to housing was so fundamental as to permit the tenant, as a matter of constitutional right, to assert what we in this jurisdiction call *"Javins-type"* defense in the possessory proceeding. The Court held that available contractual defenses could be properly asserted in another forum after the possessory issues had been litigated, and that this was constitutionally sufficient. The Court also made a pointed allusion to the constitutional rights of the landlord:

Nor should we forget that the Constitution, expressly protects against confiscation of private property or the income therefrom.

405 U.S. at 74 [92 S.Ct. at 874].

\* \* \* \* \* \*

The Court is satisfied that, under these circumstances, [where a tenant cannot pay his rent] it would be unjust to permit Ten-ant to continue to occupy Landlord's apartment for the indefinite future. The special circumstances of the landlord-tenant relationship also reflect controlling distinctions between the present case and the *Hovey-Hammond* line of authority from the perspective of the landlord, the perspective of the tenant, and the perspective of the public interest.

Turning first to Landlord, the effect on his position of *not* striking Tenant's pleadings has previously been discussed. If this litigation is permitted to continue with no funds in the registry and with Tenant on the premises, Landlord will not be in a position to rent the unit to a paying tenant. He will continue to be deprived of funds which he may well need to pay his mortgage, to maintain other tenants' apartments, and for other appropriate purposes. Such deprivation might well constitute the kind of confiscation against which the Court warned in *Lindsey*, and may adversely affect innocent third parties. If Oregon may constitutionally decline to recognize the *Javins* type of defense at all in the context of an action for possession, and if that State may require a tenant to go to trial in six days unless security is provided for future rents, then the far more tenant-oriented District of Columbia may surely give Landlord the lesser protection of recognizing the *Javins* defense in possessory proceedings but conditioning it on appropriate payments into the registry. Failure to strike the defendant's pleadings in *Hovey* would not have had any consequence on the plaintiff comparable to the consequences of an adverse decision to Landlord here, namely, a requirement that he continue to house Tenant free of charge.

Turning to Tenant, it is important to recognize that while the striking of ... pleadings would result in the termination of [the] tenancy, it would not otherwise foreclose [the tenant's] rights. [The] basic claim against Landlord is that the latter is in breach of the implied warranty of habitability. [The tenant] remains free to sue ... for breach of that contract in the Civil Division of this Court. See *Hsu v. Thomas,*

387 A.2d 588 (D.C.App.1975); *Javins, supra,* 138 U.S.App.D.C. at 381, n. 67, 428 F.2d at 1083, n. 67; *Weintraub v. George Washington University, et al.,* 108 D.W.L.R. 473, SC No. 282–80 (Super.Ct.D.C. decided February 1, 1980), appeal pending No. 80–137 (D.C.App.) [Footnote omitted.] Indeed, in a civil action based on breach of contract, [the tenant] may litigate claims not cognizable in the Landlord and Tenant Branch, in which only those breaches by the landlord which constitute housing code violations may be asserted. *Winchester Management Corp. v. Staten,* 361 A.2d 187, 192 (D.C.App. 1976). The striking of Tenant's pleadings will affect [the tenant] only insofar as it precludes [the tenant] from continuing to live in an apartment at which she [or he] is demonstrably unable to pay the rent. Although possession is important—it is the issue over which this case is being litigated—the fact that a variety of legal remedies remain to Tenant is a significant element in the weighing of equities in a case such as this, in which the losing party, whoever he or she may be, can non-frivolously cry constitutional foul.

Finally, the public interest is substantially affected by the result of this case. The protective order practice discussed in *Bell* and *McNeal* constitutes a considered judicial attempt to balance the equities and to accommodate the competing considerations inherent in landlord-tenant controversies. If tenants were permitted to continue to litigate after failing to comply with protective orders, then the precarious balance so achieved would be seriously imperiled. That balance is substantially more favorable to tenants than the Oregon system upheld by the Court in *Lindsey v. Normet, supra.* Any substantial impairment of the landlord's right to a protective order threatens to tilt the balance to such a degree that the already shrinking supply of rental housing in this jurisdiction will contract even further, to the detriment of the community at large and to relatively impecunious tenants in particular.

*Affirmed.*