**Louise PENNY, Appellant,**

v.

**Mary P. PENNY, Appellee.**

**No. 86-1655.**

District of Columbia Court of Appeals.

Argued Dec. 7, 1988.

Decided Oct. 24, 1989.

Paul J. Kiernan, with whom Richard O. Duvall, Washington, D.C., was on the brief, for appellant.

Willis C. Payton, Washington, D.C., for appellee.

Before NEWMAN, BELSON and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

Louise Penny appeals the denial of her motion to dismiss a possessory action filed by Mary Penny, her daughter, in the Landlord and Tenant Branch and an order requiring Louise to pay a monthly undertaking in the amount of $1,000 under Super.Ct. L & T R. 5(c).[1] We hold that an undertaking order entered upon interposition of a plea of title in a suit for possession in the Landlord and Tenant Branch is subject to interlocutory appeal. We find that there was no evidentiary basis for setting the amount of the undertaking at $1,000 and therefore, we vacate the under-

---

1. Super. Ct. L & T R. 5(c) provides:

A defendant desiring to interpose a plea of title must file such plea in writing, under oath, accompanied by a certification that it is filed in good faith and not for the purpose of delay and must also file an application for an undertaking or for waiver of undertaking, the form and amount of any such undertaking to be approved by the Court. Upon such approv-

al by the Court, the undertaking shall be filed within 4 days thereafter and the case shall be certified to the Civil Division for trial on an expedited basis. Upon failure to so file the undertaking, the Clerk shall strike the plea of title unless the Court for good cause shown shall extend the time within which the undertaking may be filed.

taking order and remand for further proceedings consistent with this opinion.[2]

### I.

The home at 1611 13th Street, N.W., was purchased in 1972,[3] with the names William Penny and Mary Penny appearing as joint tenants on the deed, deed of trust, deed of trust note and the title insurance policy. Mary Penny and William Penny were sister and brother, and two of Louise and Charles Penny's eleven children. After the home was purchased, Louise and Charles Penny moved into the house along with Mary and William Penny, and some of the other children. Which parties paid for the house, property taxes, upkeep and maintenance over the years, is in sharp dispute.[4]

Louise Penny, now seventy-three years old, has lived in the house since 1972. Her husband, Charles Penny, died in 1977. Mary Penny claims that about eleven years ago she was physically forced to leave the house after a family dispute, and has not been permitted to return since. Apparently, two of Mary Penny's children remained at the house following her departure. William Penny died intestate on March 11, 1985, without a wife or children. A mortgage life insurance policy purchased by William Penny paid off the mortgage upon his death.

On July 8, 1986, Mary Penny filed an action in ejectment against Louise Penny and four of her siblings in the D.C. Superior Court, Civil Division, claiming full title to the house as the sole survivor of the joint tenancy between herself and William Penny. In her answer, Louise Penny denied, *inter alia*, that Mary and William Penny were joint tenants with right of survivorship and that she was wrongfully in possession of the house. Louise Penny also filed a counterclaim seeking a declaration that William Penny was the sole rightful owner of the house and that upon his death Louise Penny succeeded to his interest in the house, or alternatively, that Louise Penny has an equitable life estate in the property and that she be allowed to remain in the house undisturbed until she dies.

While the ejectment suit was pending, Mary Penny secured another attorney who, unaware of the Civil Division action, sent Louise Penny a thirty day notice to quit and vacate the house. When Louise Penny failed to vacate, Mary Penny filed a complaint for possession in the Landlord and Tenant Branch. In response, Louise Penny filed a motion to dismiss.

A hearing on the motion to dismiss was held on December 10, 1986, before Judge Mitchell. Judge Mitchell rejected Louise Penny's arguments that the suit for possession was duplicative of the pending ejectment suit in the Civil Division, and that the Landlord and Tenant Branch lacked jurisdiction over the case because no landlord tenant relationship existed between the parties.

However, Judge Mitchell found that the circumstances presented a "plea of title-type case," wherein a party interposes a plea of title in response to a suit for possession. In such cases, Super.Ct. L & T R. 5(c) requires the defendant to certify that the plea of title is made in "good faith and not for the purpose of delay and must also file an application for an undertaking or for waiver of undertaking." Contingent upon

---

2. We reject for lack of jurisdiction Louise Penny's other contentions that the Landlord and Tenant Branch should have declined jurisdiction because no landlord tenant relationship existed and the pleadings in the ejectment and possessory actions were allegedly inconsistent; and that the Landlord and Tenant Branch should have dismissed the possessory action because it was duplicative of the previously filed ejectment action and improperly shifted the legal and economic burden of proving title to Louise Penny.

3. Mary Penny and William Penny entered a contract to purchase the property on December 6, 1971; settlement occurred in February, 1972.

4. Louise Penny avers that Charles Penny and William Penny provided all of the money for the purchase of the house, the mortgage payments, taxes and other expenses, and that Mary Penny never contributed to these costs. Mary Penny claims that she "contributed monies toward the expenses of the premises," including payment of two overdue mortgage installments and the outstanding real property taxes following William Penny's death.

defendant's compliance with the undertaking order, unless of course, a waiver is obtained, the plea of title effects a stay of the proceedings in the Landlord and Tenant Branch while the case is certified and transferred to Civil Division for trial on the question of ownership. Super.Ct. L & T R. 5(c); *see Turner v. Day*, 461 A.2d 697 (D.C.1983). Accordingly, Judge Mitchell gave Louise Penny leave to file a plea of title and an application for an undertaking.

Thereafter, Louise Penny moved for reconsideration of the denial of the motion to dismiss and also filed a plea of title and an application requesting waiver of the undertaking with supporting affidavit. In the affidavit Louise Penny swore that she has no savings and that her only source of income is a monthly social security check in the amount of $515.

At a hearing on December 15, 1986, Judge Mitchell denied the motion to dismiss and the application for waiver of the undertaking. The judge reasoned that an undertaking was appropriate in this case because "all legal title and interest is in [Mary Penny] and [Louise Penny is] asserting an equitable theory of right which has to be proven and the only way this person can be protected is [to] require [her] to pay some money." Transcript, Supplemental Record No. 1, at 25. Upon Mary Penny's request, he ordered Louise Penny to pay $1,000 per month into the Registry of the Court, without any offset for monies allegedly owed by Mary Penny to Louise Penny for house expenditures over the years, in lieu of posting a bond.

Louise Penny then filed the instant appeal, contending that the trial court erred by denying the motion to dismiss and abused its discretion by not waiving the undertaking given the circumstances of the case or alternatively, by conditioning her

plea of title on monthly payment of an undertaking almost two times more than her monthly income. We granted Louise Penny's motion for stay of payment of the undertaking pending appeal.

## II.

### A.

This court recently held in *McQueen v. Lustine Realty Co.*, 547 A.2d 172, 173 (D.C.1988) (en banc), that "protective orders entered in actions for summary possession in the Landlord and Tenant Branch are subject to interlocutory appeal" because under the two-pronged test set out in *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), such orders have the "practical effect" of an injunction and therefore, are appealable as orders with respect to injunctions under D.C.Code § 11–721(a)(2)(A) (1981).[5]

In *McQueen*, we found that a pretrial protective order entered in the Landlord and Tenant Branch is appealable because 1) it "clearly has the 'practical effect' of an injunction in that it enjoins the tenant to pay a specified amount in rent, at given intervals, in a particular manner (generally, into the registry of the court)," *supra*, 547 A.2d at 176–78; and 2) it threatens the tenant with the "serious, perhaps irreparable consequence" of losing possession of the property because the court normally will strike the tenant's pleadings and enter judgment in favor of the landlord if she fails to comply with the order. *Supra*, 547 A.2d at 178.

■ It is true that a *"McQueen"* protective order is an equitable device of the court whereas a "Rule 5(c)" undertaking order is statutorily authorized,[6] and a protective order covers lost rent and damages whereas an undertaking order covers these items plus the cloud on the title created by the plea.[7] Notwithstanding these differ-

---

5. D.C.Code § 11–721(a)(2)(A) (1981) authorizes this court to hear appeals from "interlocutory orders of the Superior Court of the District of Columbia—(A) granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions."

6. *Compare Habib v. Thurston*, 517 A.2d 1, 12 (D.C.1985) ("A protective order is an 'equitable tool' ") *and Bell v. Tsintolas Realty Co.*, 139 U.S. App.D.C. 101, 109, 430 F.2d 474, 482 (1970) (protective order is an "equitable remedy") *with* Super. Ct. L & T R. 5(c).

7. "An undertaking is not merely a protective

ences, their function and purpose is the same: to balance and protect the parties' legitimate and competing interests over the course of the litigation. *Compare Turner, supra,* 461 A.2d at 699–700 (Rule 5(c) "seeks to accommodate the parties' legitimate but competing interests") *with Habib, supra,* 517 A.2d at 12–13 (a protective order is "designed to protect both parties during the pendency of a landlord-tenant action.... This device protects the tenant from falling further in arrears and risking forfeiture of her lease," and provides the landlord "compensation 'for the possession he loses during the period of litigation'") (quoting *Dameron v. Capitol House Associates,* 431 A.2d 580, 584 (D.C.1981) (citations omitted) *and Mahdi v. Poretsky Management, Inc.,* 433 A.2d 1085, 1088 (D.C.1981) ("'Protective orders requiring prospective payments into the registry were devised in order to preserve some reasonable balance between the rights of landlords and tenants'" throughout the litigation) (quoting *Arthur E. Morrisette Real Estate v. Hunt,* 109 D.W.L.R. 901 (No. L & T 23841–81, April 8, 1981)) *and Bell, supra,* 430 F.2d at 482 (the protective order may be used "to avoid placing one party at a severe disadvantage during the period of litigation."). For the purpose of determining appealability, we find no meaningful distinction between the *McQueen* protective order and the Rule 5(c) undertaking order.

Furthermore, independent of the close analogy between *McQueen* protective orders and Rule 5(c) undertaking orders, we find that Rule 5(c) undertaking orders satisfy the requirements of the *Carson* "practical effect" test. *Supra,* 450 U.S. at 83–84, 101 S.Ct. at 996–997. First, an undertaking order, like a protective order, has the "practical effect of an injunction" in that it enjoins the defendant to pay a specified amount on a regular basis into the

registry of the court in lieu of rent, and to "refrain from withholding or delaying the required payments." *Compare* Super. Ct. L & T R. 5(c) *with McQueen, supra,* 547 A.2d at 177. Second, as with noncompliance of a protective order, where the amount of the undertaking is set too high or is otherwise erroneously determined, the defendant may lose her home for failure to make the requisite payments absent the opportunity for interlocutory appeal, notwithstanding whatever meritorious defenses she may have to the suit for possession. *Compare* Super. Ct. L & T R. 5(c) *with McQueen, supra,* 547 A.2d at 178.

For the foregoing reason, we hold that Rule 5(c) undertaking orders are subject to appeal as orders with respect to injunctions under section 11–721(a)(2)(A). Having established our jurisdiction, we review the trial court's order for abuse of discretion. *Turner, supra,* 461 A.2d at 699; *see* Super. Ct. L & T R. 5(c) (the trial court must approve the "form and amount" of the undertaking).

### B.

This court has construed Super. Ct. L & T R. 5(c) "presumptively to require an undertaking, subject to circumstances supporting the defendant's application for waiver." *Turner, supra,* 461 A.2d at 699. The defendant has the burden of persuading the court that waiver of the undertaking is appropriate. *Id.* However,

[o]nce a defendant has presented a persuasive argument for waiver, or for an undertaking limited, for example, to the fair monthly rental value of the property, the trial court, in the exercise of sound discretion, may shift to the plaintiff the burden of producing evidence that a greater amount is required, for the plaintiff usually will be in a better position than the defendant to evaluate possible

---

order in the amount of a monthly payment fashioned to assure reimbursement to the landlord for the value of fair use and occupancy during the pendency of a possessory action against a tenant. An undertaking covers more. It is used when the defendant interposes a plea of title and serves to assure compensation of the plaintiff not only for lost rent but also for the

cloud on the title and related damages and costs. *Turner, supra,* 461 A.2d at 700 (citations omitted); *see Scheve v. Hollins,* 131 U.S.App. D.C. 160, 163, 403 F.2d 566, 569 (1968) (plea of title statute affords the successful plaintiff the right to obtain recovery of mesne rent and damages).

damages, including an assessment of the consequences of a cloud on the title. *Id.* at 699 n. 5.

Louise Penny requested a waiver based on the following assertions: she had lived in the house since 1972 without a lease, payment of rent or Mary Penny's permission; Mary Penny had never contributed to the mortgage and maintenance of the house; the mortgage is fully paid; her current poverty level income of $515 per month; since the house was purchased, Mary Penny had never received any rent; and as a result of Mary Penny's ejectment action against Louise Penny, there was a preexisting cloud on the title. The trial judge denied the waiver on the strength of the fact that whereas Louise Penny was "asserting an equitable theory of right," legal title was "clearly vested" in Mary Penny.

■ This court has previously held that the "merits of the defendant's plea of title may be relevant in determining whether a particular undertaking is a fair obligation to impose on a defendant." *Turner, supra,* 461 A.2d at 700. Plainly then, the merits of the plea must also be relevant to the initial decision whether to waive the undertaking. We conclude therefore, that the trial court did not abuse its discretion in denying the waiver.

Nevertheless, we agree with Louise Penny that the trial court abused its discretion in setting the amount of the undertaking at $1,000 per month. *See Johnson v. United States,* 398 A.2d 354 (D.C.1979). This case presents the anomalous "landlord-tenant" proceeding wherein the parties' relationship reveals none of the attributes a court generally looks to in determining the amount of the undertaking. Typically, the court will require the tenant to pay "the agreed upon monthly rent, or sometimes a lesser amount." *Mahdi, supra,* 433 A.2d at 1086 (protective order); *see Turner, supra,* 461 A.2d at 700 (undertaking order);

*McNeal v. Habib,* 346 A.2d 508, 512 (D.C. 1975) (protective order); *Bell, supra,* 430 F.2d at 482 (protective order); *Scheve, supra,* 403 F.2d at 569 (undertaking order). In undertaking cases covered by Super. Ct. L. & T.R. 5(c), the current rent (or fair market rental value, as the case may be) provides a starting point from which other considerations may be weighed. Other factors include:

> possible damages and costs, the defendant's income, and the amount of payment which are presently being made to other mortgagees. The guiding principle for the court is, of course, to arrive at a reasonable monthly payment which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent.

*Thompson v. Mazo,* 137 U.S. App.D.C. 221, 226, 421 F.2d 1156, 1161 (1970), *cited with approval in Turner, supra,* 461 A.2d at 698–99.

In this case, no rent was paid and therefore the trial court had no benchmark to work from. The record discloses that there was neither a written or oral lease, nor any other type of agreement concerning payment of rent between the parties.[8] Furthermore, no evidence on this issue was presented at the December 15th hearing. With regard to the amount of the undertaking, we have only the following statements of Mary Penny's counsel:

> [O]n Friday of last week, I went over and got the the assessed value of the property which was $80,125. Now, Your Honor would note that normally you would have to pay on a $80,000 mortgage, if you could get it the least would be $10 a thousand, or more likely, $15 per thousand, which would be at $10 a thousand, $800 per month. And if $15 a thousand,

---

8. Mary Penny conceded to the absence of an agreement to pay rent in her Memorandum of Points and Authorities. Record at 38. Nevertheless, she filed her complaint for possession using a standardized form (Landlord Tenant Form 1), which inquires: "If the tenancy is by

*written agreement or lease,* check the following ground(s) upon which possession is sought: ..." Record at 1 (emphasis added). Mary Penny left blank that portion of the form requesting an indication of the amount of rent in arrears. *Id.*

it would be $1200 per month. Now, we would even take the middle road and say a thousand dollars per month. Your Honor will further note that this plaintiff has been the sole ... owner of this property for twenty months and has lost potentially $20,000 in rents, which we have no way of ever getting. So I would say to His Honor that on the defense plea of title, that they should be required to take an undertaking in the amount of twice the value of the property which would be $160,000 and should be required to pay rent into the registry of the Court in the sum of a thousand dollars per month.

Transcript, Supplemental Record No. 1, at 22. These statements do not provide an evidentiary basis for setting the undertaking at $1,000 per month.[9]

Louise Penny also did not present evidence on the fair rental value or the fair market value of the home. Her arguments focused instead on the application for waiver, although she did contend that the $1,000 amount was too high relative to her income and in any event, should be offset by monies she spent on the house.

In light of the rather atypical situation presented by these facts, particularly the absence of any reference point from which to set the undertaking such as rent or mortgage payments, the trial court abused its discretion in ordering Louise Penny to pay $1,000 per month absent evidence concerning what amount would constitute a fair market rental value balanced by the likelihood that Louise Penny may prevail on the merits, as well as the other relevant circumstances that the trial court should consider in deciding waiver or amount of an undertaking. *See Turner, supra,* 461 A.2d 698–99 (citing *Thompson, supra,* 421 F.2d at 1161). *See generally Johnson, su-*

*pra,* 398 A.2d 354. We vacate the undertaking order entered by the trial court and remand for further proceedings consistent with this opinion.[10]

SCHWELB, Associate Judge, concurring in part and dissenting in part:

This is a most unfortunate case. Mary Penny is one of Louise Penny's eleven children. She is seeking to evict her elderly mother, Louise Penny, who is living on social security, from the home in which the mother has lived for some time. It would be more edifying to resolve this controversy by negotiation than by continuing this protracted litigation. Nevertheless, as my colleagues point out, the controversy over the undertaking—really a kind of protective order [1]—is governed by equitable principles. Believing that the results of this case to date have been less than equitable, I respectfully dissent from a part of the majority's holding.

## I

It would be the purest sophistry to suggest that the evidentiary base on which the undertaking rests has any appreciable substance. We have a representation by the daughter's counsel that the assessed value of the house was $80,000 plus change, that on a mortgage of that size, the monthly payment would be $10 to $15 per $1,000, or $800 to $1200 per month, and (implicitly) that the fair rental value would be in the same general neighborhood. Based on that proffer, Judge Mitchell required the mother to pay $1,000 per month.

Counsel for the mother never contested the accuracy of the proffer, either as to the value of the house or as to the formula which the daughter's attorney presented to

9. Our decision in this case should not be understood to preclude a trial judge sitting in the Landlord and Tenant Branch from making use of proffers in setting protective and undertaking orders, particularly where the proffers are uncontested. Here, counsel merely proffered the assessed value of the property, from which he derived the $1,000 per month payment.

10. Given this disposition, we express no opinion concerning the appropriateness of an undertak-

ing in a sum twice the amount of Louise Penny's monthly income in this unfortunate family dispute. Since we recognize that Mary Penny has been receiving nothing during the time that the undertaking was stayed by this court, the trial court should expedite this matter on remand.

1. I use the two terms interchangeably in this opinion.

the court. The defense provided no evidence or counterproffer as to fair rental value. In the trial court and even on appeal, the mother's only real objection to the amount of the undertaking was that she could not afford to pay it.[2]

My colleagues acknowledge that protective orders are often set in the Landlord and Tenant Branch on the basis of proffers of counsel. They correctly point out, however, that in most such cases the agreed rent provides at least a benchmark from which the amount of the protective order may be derived. *See Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 111, 430 F.2d 474, 484 (1970). In the present case, we have no such benchmark. Having proved nothing, says the majority in effect, the daughter was not entitled to a protective order in any amount.

The question is not free from difficulty. In my opinion, however, a figure derived from an uncontested representation by counsel is more equitable than zero, even where, as here, the proffer is based on a formula whose reliability may be on a par with the Edsel as Car of the Year. If counsel for the mother had challenged his adversary's proffer, the daughter might have obtained the services of an appraiser, or could perhaps have testified herself as to the fair rental value of the premises. *See, e.g., Hartford Accident & Indemnity Co. v. Dikomey Mfg. Jewelers, Inc.*, 409 A.2d 1076, 1079 (D.C.1979) (owner's valuation of his or her property admissible without qualification other than ownership).[3]

Under the majority's approach, which in effect applies a "plain error" theory, the mother profits substantially from her failure to object. I find that result, and the notion that the daughter must for all practical purposes start all over again, even more inequitable than the setting of an undertaking on the basis of an unreliable but unchallenged proffer. I would therefore affirm, but leave the mother free to

seek modification of the undertaking[4] in light of the less than ideal manner in which its amount was determined.

## II

Although there is probably little if anything that we can do about it so long after the fact, I also think it appropriate to note the problems now posed by the stay entered by this court in December 1986—almost three years ago—of *any* protective order or undertaking. For that entire period of time, while the case has proceeded at a less than frenzied pace through our formidable appellate docket, the mother has lived in the house in question without being required to pay the daughter anything or to deposit any money with the court. The protective order device, of which the undertaking in this case is the substantial equivalent, was "created by the courts to maintain an equitable balance during litigation of the suit for possession." *Davis v. Rental Associates, Inc.*, 456 A.2d 820, 823 (D.C. 1983) (*en banc*). This equitable balance has been sorely tested here.

Let us assume, solely for the sake of argument, that the daughter's counsel's valuation and formula are self-serving, and that a proper monthly protective order would have been in the amount of $500. In the months that have passed since the stay, the daughter is already "out" about $18,-000. Moreover, in December 1986, the daughter's counsel complained that at that time the mother had already lived in the house for nothing for a period of twenty months.

> In Judge Wright's words in *Bell, supra,*
>
> we feel the protective purpose of the rent payment requirement *ordinarily* will be well served simply by requiring only future payments falling due after the date the order is issued to be paid into the court registry.

---

**2.** The mother did proffer that she made improvements to the house which ought to be taken into account.

**3.** In this case, of course, ownership is in issue.

**4.** Since the protective order has been stayed, and since further proceedings are contemplated both under the majority's resolution and under mine, the practical consequences of the two approaches are probably the same.

139 U.S.App.D.C. at 110, 430 F.2d at 483 (Emphasis added); *accord, Davis, supra,* 456 A.2d at 823. The word "ordinarily" implies that there are exceptions, and at first blush, one might conclude that a case in which there has been no protective order payment for three years is not ordinary but exceptional.

According to the court in *Bell,* the reason for limiting protective orders to prospective rent is that

> inclusion of back rent alleged to be due would depart from this protective purpose, since the landlord cannot recover back rent in a suit for possession,[5] and would be in the nature of a penalty on the tenant.

139 U.S.App.D.C. at 110, 430 F.2d at 483. In the present case it is the daughter who might reasonably claim that she is being penalized where she has received no security for almost three years while her mother has occupied a house to which the daughter holds legal title. If the daughter ultimately prevails, it is unlikely that she will ever receive redress for the financial loss which she will have incurred during the time that no undertaking has been enforced. Under these circumstances, a protective order retroactive to December 1986, when (as the majority recognizes) an undertaking in the proper amount would have been appropriate, may appear theoretically justifiable and superficially (though not sentimentally) appealing.

Theory often founders on reality, however. If a protective order retroactive to 1986 were now entered, the mother would probably be unable to comply with it. If she were unable to pay, then the likely practical consequence would be an order compelling her to vacate the premises, *Mahdi v. Poretsky Management, Inc.,* 433 A.2d 1085 (D.C.1981), without the mother first having the opportunity to litigate the merits of her claim of title. Moreover, the daughter still would not recover the fair

value of the premises for the period when no undertaking was enforced.

We must live in the real world. Accordingly, I agree with the majority that directing expedition in the trial court is about all that we can reasonably do in late 1989 about what happened in 1986. This case instructs, however, that where a protective order or similar measure is stayed pending appeal, the court, with the assistance of counsel,[6] should attempt to ensure that some equitable interim order is entered, and that any lasting prejudice to any party from the inevitable passage of time be avoided or kept to the minimum.

---

**5.** *But see* Super. Ct. L & T R. 3, providing that the complaint may include a claim for a money judgment based on rent in arrears, provided that the defendant has been personally served, or has asserted a counterclaim or defense of set-off or recoupment.

**6.** Counsel for the daughter never requested any kind of emergency or other relief, or even expedition, after the protective order was stayed in 1986.