**Gloria McQUEEN,**

and

**Joseph Blacknall, et al., Appellants,**

v.

**LUSTINE REALTY COMPANY, INC., Appellee.**

**Nos. 86–474, 86–475.**

District of Columbia Court of Appeals.

Argued en banc Jan. 15, 1988.

Decided Sept. 2, 1988.

Harnam S. Arneja, Washington, D.C., for appellants.

Brian D. Riger, with whom Robert W. Gildar, Washington, D.C., was on the brief, for appellee.

Ellen M. Scully for amicus curiae Columbus Community Legal Services, Catholic University of America, in support of the interlocutory appealability of protective orders.

Michael McAdoo, with whom Roger D. Luchs, Washington, D.C., was on the brief, for amici curiae in opposition to the interlocutory appealability of protective orders.

Before PRYOR, Chief Judge, and MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

In this consolidated appeal, several tenants in a building managed by the appellee challenge trial court orders increasing the dollar amounts of protective orders entered in actions for summary possession now pending against them in the Landlord and Tenant Branch. Recognizing a conflict in our caselaw, this court, *sua sponte,* ordered removal of the consolidated cases from the regular calendar and scheduled them for hearing en banc to resolve the preliminary jurisdictional question of the

interlocutory appealability of protective orders generally. We appointed amici curiae to brief both sides of that issue.* We now hold that protective orders entered in actions for summary possession in the Landlord and Tenant Branch are subject to interlocutory appeal. We leave the merits of this particular case, however, for consideration by the division of the court originally assigned to hear these appeals.

## I.

Appellants Gloria McQueen, Joseph Blacknall, and Romona Blacknall (the tenants) reside in a building at 1838 16th Street, N.W., managed by appellee Lustine Realty Company, Inc. (the landlord). In April 1984, Sara Lustine transferred ownership of the property to her daughter, Marlyne Klawans, who then filed a claim of exemption from rent control with the Rental Accommodations and Conversion Division. She alleged that the building contained only four residential units, that she owned no other residential property in the District of Columbia, and that the building accordingly qualified for exemption under the provisions of the Rental Housing Act of 1980. *See* D.C.Code §§ 45–1501 through 45–1663 (1981) (§§ 45–1501 through 45–1551 expired on April 30, 1985, D.C.Law 3–131, § 907; §§ 45–1561 through 45–1563 were repealed effective April 30, 1985, D.C.Law 6–10, § 905, 32 D.C.Reg. 3089). The exemption was granted. Thereafter, the landlord notified the tenants that the building had become exempt and that their rent would be increasing. The tenants contested the validity of the exemption and of the rent increase in a joint petition filed with the Office of the Rent Administrator. After a hearing, the Hearing Examiner confirmed that the building was exempt and dismissed the tenants' petition without prejudice. The tenants appealed to the Rental Housing Commission, which eventually reversed and remanded the case. On the landlord's motion for reconsideration, however, the Commission reversed itself and affirmed the Hearing Examiner's original decision. This court recently affirmed the Commission's decision in *Blacknall v. District of Columbia Rental Housing Commission,* 544 A.2d 710 (D.C.1988).

Notwithstanding the Hearing Examiner's original ruling, the tenants continued to tender their respective rents to the landlord in the old, pre-exemption amounts. These payments were refused. The landlord then initiated separate actions for possession based upon nonpayment of rent. The trial court entered protective orders in the amounts of the post-exemption rents sought by the landlord. During the pendency of the litigation, moreover, the landlord moved for increases in the respective amounts of the protective orders. The trial court granted an increase from $390 per month to $525 per month in the Blacknalls' case and from $405.50 per month to $600 per month in McQueen's case. The Blacknalls and McQueen each appealed the increase, and, as noted above, we have consolidated the appeals.

## II.

In deciding whether a tenant may appeal an increase in a protective order (or, for that matter, the original protective order itself) before a final decision on the merits of the underlying action for possession, we confront two conflicting precedents: *Dameron v. Capitol House Associates Limited Partnership,* 431 A.2d 580 (D.C.1981), and *Taylor v. First American Title Co.,* 477 A.2d 227 (D.C.1984). In *Dameron,* a group of tenants opposed a rent increase implemented by their landlord. As in this case, the tenants continued to pay the old rent but refused to pay the increase. The landlord then sued for possession based upon nonpayment of the new rent. The trial court granted the landlord's request for a protective order in the amount of the new rent and further ordered monthly disbursement of an amount equal to the old, undisputed rent to the landlord from the court registry. The tenants appealed. A division of this court dismissed the appeal for

---

* We thank the amici for their excellent service to the court in providing us with thoughtful and thorough briefs and oral argument.

lack of jurisdiction, holding that because the trial court order was not a final order, or an interlocutory order appealable under D.C.Code § 11–721(a)(2) (1973), or a collateral order of the sort appealable under the test set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the appeal was not ripe for review.

In *Taylor*, another division of this court held, to the contrary, that the protective order was appealable. The *Taylor* division relied upon pre-*Dameron* federal precedent, *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970), and *Cooks v. Fowler*, 141 U.S.App.D.C. 236, 437 F.2d 669 (1971) (*Cooks I*), holding that protective orders fall within the *Cohen* collateral order doctrine. The court noted the conflict with *Dameron* but concluded that, under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971), it was constrained to recognize *Bell* and *Cooks I* as binding precedent.

We now decline to follow either *Dameron* or *Taylor*. Without having to address the collateral order issue presented in *Dameron*, we conclude that a protective order has the "practical effect" of an injunction under *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), and thus is appealable under D.C.Code § 11–721(a)(2)(A) (1981).

### III.

Our analysis begins with *Bell*, the seminal protective order case. There, the United States Court of Appeals for the District of Columbia Circuit, at the time having authority to review decisions of this court, considered motions for stay of protective orders entered against tenants in summary actions for possession pending both in the trial court and in this court. The circuit court also considered the propriety of the underlying protective orders. Specifically, the court addressed the question "whether and under what circumstances the Landlord and Tenant Branch ... may issue orders of the type designed to protect landlords during the period of litigation." *Bell*, 139 U.S.App.D.C. at 106, 430 F.2d at 479. The court concluded that protective orders could properly be entered in the exercise of the court's equitable jurisdiction and set forth criteria for the entry of such an order. The court also noted, however, that "[w]e have previously viewed the struggle between tenants and landlords as involving 'a variety of closely balanced legal and tactical approaches,'" and that the protective order "carries a substantial risk of upsetting the precarious balance of tactics in landlord-tenant litigation...." *Id.* at 107–08, 430 F.2d at 480–81 (quoting *Dorfmann v. Boozer*, 134 U.S.App.D.C. 272, 278, 414 F.2d 1168, 1174 (1969)). In recognition of the hardship such orders potentially could cause tenant-litigants, the court cautioned that "such prepayment is not favored and should be ordered only in limited circumstances, only on motion of the landlord, and only after notice and opportunity for hearing on such a motion." *Id.*, 139 U.S.App.D.C. at 106, 430 F.2d at 479. The circuit court then remanded the case to this court for reconsideration in light of the prescribed criteria.

A year later in *Cooks I*, the federal circuit court allowed an appeal from an order of this court denying the tenant-litigants relief, pending appeal, from a protective order granted by the trial court. The court permitted the appeal even though the underlying action for possession was still pending before this court. The court made explicit the jurisdictional holding implicit in *Bell*, commenting:

> With some regularity we have considered pretrial protective orders appealable, [citing *Bell*], and we perceive no basis for distinguishing protective orders framed with a view to a prospective appeal. Both types seem to fall within the collateral order doctrine articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 [69 S.Ct. 1221, 93 L.Ed. 1528] (1949).

*Cooks I*, 141 U.S.App.D.C. at 239 n. 7, 437 F.2d at 672 n. 7. The court also observed:

> Dispossession of the tenant for noncompliance with a protective order invariably threatens serious consequences for the tenant.... [E]viction would disrupt, perhaps for a substantial period, an on-

going occupancy upon which the tenant insists as a matter of continuing right. Furthermore, when the situation is viewed realistically, one could hardly vouch for the likelihood that the occupancy will be resumed in the event of an ultimate merits victory for the tenant. *Id.* Accordingly, the court concluded, the equities militate in favor of the interlocutory appealability of protective orders in landlord and tenant cases.[1]

### A.

To understand the *Cooks I* court's reliance on *Cohen* for appealability, it is useful to examine the state of the relevant jurisdictional law at that time. In *Cooks I*, the circuit court was entitled to accept jurisdiction over the appeal from this court's denial of the tenant's motion for a stay because that court, at the time, had discretionary appellate jurisdiction over this court's decisions pursuant to D.C.Code § 11–321 (1967). Implicitly, of course, the circuit court's acceptance of a discretionary appeal from a decision of this court presupposed this court's proper exercise of jurisdiction over the appeal in the first place. This court's appellate jurisdiction at that time was governed by D.C.Code § 11–741(a) (1967), which provided in relevant part:

The District of Columbia Court of Appeals has jurisdiction of appeals from:

(1) final orders and judgments of the District of Columbia Court of General Sessions ...;

(2) interlocutory orders ... whereby the possession of property is changed or affected ...; and

(3) final orders and judgments of the Juvenile Court of the District of Columbia.

Accordingly, interlocutory relief from orders with respect to injunctions, as such, was not available in this court at the time of the *Cooks I* decision. The *Cooks I* court, therefore, had to find appealability, if at all, under the *Cohen* doctrine permitting an appeal from any order that represents "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." *Cohen,* 337 U.S. at 546–47, 69 S.Ct. at 1225–26; *see Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978).

Since court reorganization, however, the District of Columbia Court of Appeals has jurisdiction over interlocutory appeals from orders with respect to injunctions pursuant to D.C.Code § 11–721(a)(2)(A) (1981). We therefore no longer are limited to considering *Cohen* as the most likely avenue, if any, to appealability of orders such as the one at issue here.[2] Were we so limited, we would find the jurisdictional issue troubling, for *Dameron*'s analysis of *Cohen*'s collateral order doctrine as applied to protective orders is not without force. *See Dameron,* 431 A.2d at 580, 586–87. We need not decide the collateral order issue, however, because appealability is more easily resolved under § 11–721(a)(2)(A).

### B.

Analogizing protective orders to injunctions, rather than to collateral orders appealable under *Cohen*, is not unprecedented in our caselaw. In *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.,* 385 A.2d 20 (D.C.1978), this court, pursuant to our jurisdiction under § 11–721(a)(2)(A) (1973),[3] reviewed an appeal from a pretrial

1. In a contemporaneous case, *Blanks v. Fowler,* 141 U.S.App.D.C. 244, 245 n. 9, 437 F.2d 677, 678 n. 9 (1970), the United States Court of Appeals for the District of Columbia Circuit accepted jurisdiction over an appeal from a protective order entered pending trial, stating, "[o]ur jurisdiction is clear" and citing the opinion of the court in *Cooks v. Fowler,* 141 U.S.App.D.C. 236, 437 F.2d 669 (1970) (*Cooks I*).

2. The division in *Taylor v. First American Title Co.,* 477 A.2d 227 (D.C.1984), was constrained to follow *Cooks I,* including its jurisdictional rationale applying *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because of this court's decision in *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). Sitting en banc, however, we are not so limited. *Id.*

3. D.C.Code § 11–721(a)(2)(A) (1981), enacted as part of the reorganization of our local court system, provides that the District of Columbia Court of Appeals shall have jurisdiction of ap-

order requiring a developer to pay to an owners' cooperative association monthly maintenance and operating assessments due on unsold units in the building that remained under the developer's control. We deemed the pretrial order an injunction, noting that the trial court had fashioned the order pursuant to *Bell*'s authority to enter an analogous protective order in landlord and tenant proceedings. Throughout, this court in *Wisconsin Avenue* treated both the order at issue in that case and the protective order at issue in *Bell* as injunctions, noting:

> Whether payment is to the court or directly to the other party, the need which underlay the order remains the same, specifically, to maintain the status quo and prevent disadvantage pendente lite. *This is the office of injunctive relief.*

*Wisconsin Avenue*, 385 A.2d at 23 (citation omitted) (emphasis added).

Although a pretrial protective order in the Landlord and Tenant Branch is a unique remedy, we believe it falls within the "practical effect" test used to define injunctive relief for appeal purposes in *Carson*, 450 U.S. 79, 101 S.Ct. 993, and adopted by this court in *Brandon v. Hines*, 439 A.2d 496 (D.C.1981). In *Carson*, the petitioners sought review of a trial court order denying the parties' joint motion for approval of a negotiated consent decree in a Title VII class action suit brought by black employees and applicants for employment in one of the defendant's departments. The proposed consent decree would have remedied the alleged discrimination by giving hiring and seniority preferences to black employees and by requiring the defendant to fill one-third of the supervisory positions in its department with qualified blacks. *Carson*, 450 U.S. at 81, 101 S.Ct. at 995. The Supreme Court held that the order denying approval of the consent decree was appealable under 28 U.S.C. § 1292(a)(1), the federal analogue to our § 11–721(a)(2)(A), permitting appeals from orders with respect to injunctions. Recognizing that the consent decree was

not an injunction as such, the court nonetheless found that: (1) the consent decree would have had the "practical effect" of an injunction; (2) the litigants would suffer a "'serious, perhaps irreparable consequence'" from failure to implement the consent decree, and, accordingly, the order denying approval of that decree could be "'effectually challenged'" only by immediate appeal. *Id.* at 83–84, 101 S.Ct. at 996–97 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)). Thus, the court concluded, the order denying approval of the consent decree qualified, for purposes of appeal, as an order with respect to an injunction and, therefore, fell within the statutory rubric.

Like the consent decree at issue in *Carson*, protective orders entered in summary actions for possession in landlord and tenant proceedings satisfy, for appeal purposes, both prongs of the *Carson* "practical effect" test. As elaborated below, orders with respect to protective orders thus qualify as orders with respect to injunctions and are therefore appealable under D.C.Code § 11–721(a)(2)(A).

(i)

First, a protective order clearly has the "practical effect" of an injunction in that it enjoins the tenant to pay a specified amount in lieu of rent, at given intervals, in a particular manner (generally, into the registry of the court). Moreover, the protective order limits the tenant's ability to engage in a rent strike or similar self-help remedy to obtain relief from the landlord. The protective order, therefore, appears to have the fundamental elements of an injunction.

More specifically, an injunction may be defined as an equitable remedy, consisting of a command by the court, through an order or writ, that the party to whom it is directed do, or refrain from doing, some specified act. *See United Bonding Insurance Co. v. Stein*, 410 F.2d 483, 486 (3d Cir.1969) ("An injunction is a prohibitive writ issued by a court of equity forbidding

---

peals from "interlocutory orders of the Superior Court of the District of Columbia—(A) granting,

continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions."

a party-defendant from certain action, or in the case of a mandatory injunction, commanding positive action."); *Inhabitants of Town of Lincolnville v. Perry*, 150 Me. 113, 116, 104 A.2d 884, 887 (1954) ("An injunction has been well described as a judicial process whereby a party is required to do or refrain from doing a particular thing."); *Bellows v. Ericson*, 233 Minn. 320, 325, 46 N.W.2d 654, 658 (1951) (" 'A writ of injunction may be defined as a judicial process, operating in personam, and requiring the person to whom it is directed *to do* or to refrain from doing a *particular thing.*' " (emphasis in original) (quoting 3 DUNNELL, DIG. § 4467)); *Cutten v. Latshaw*, 344 S.W.2d 257, 262 (Mo.App.1961) (" 'An injunction is a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience.' " (quoting 43 C.J.S. *Injunctions* § 1, p. 405)); *Gainsburg v. Dodge*, 193 Ark. 473, 476, 101 S.W.2d 178, 180 (1937) (" 'A writ of injunction may be defined as a judicial process, operating in personam, and requiring the person to whom it is directed to do or refrain from doing a particular thing.' " (quoting HIGH ON INJUNCTIONS (4th Ed.) § 1, p. 2)); BLACK'S LAW DICTIONARY 705 (5th ed. 1979); 42 AM.JUR.2d *Injunctions* §§ 1–2 (1969); 43 C.J.S. *Injunctions* § 2 (1978).

Obviously, the protective order is a court command to the tenant to pay an amount in lieu of rent on a regular basis and to refrain from withholding or delaying the required payments. Furthermore, as the court noted in *Bell*, the protective order represents an exercise of the court's equitable jurisdiction. *Bell*, 139 U.S.App.D.C. at 106, 430 F.2d at 479. Even in *Dameron*, where the division concluded the protective order was not appealable, we recognized that a "protective order is an equitable tool of the court." *Dameron*, 431 A.2d at 583.

Given these similarities between a protective order and a typical injunction, one may question why we do not simply say protective orders are injunctions appealable for purposes of § 11–721 and leave it at that. The difficulty, however, is that a protective order, while very much like a traditional injunction, is a judicial creation specifically tailored to the circumstances of summary proceedings in the Landlord and Tenant Branch and, as such, has not historically been treated as an ordinary injunction. The trial court, for example, rarely, if ever, adheres to the mandates of Super.Ct.Civ.R. 65 (with respect to injunctions) in entering protective orders, although it is clear that if the protective order were a true injunction, the court would be bound by that rule. *See Family Federal Savings & Loan Association v. King*, 497 A.2d 115 (D.C.1985). Furthermore, the sanction imposed for breach of a protective order is generally the striking of the tenant's pleadings and the entry of judgment for the landlord, *see Davis v. Rental Associates, Inc.*, 456 A.2d 820, 827 & n. 9 (D.C.1983) (en banc), not the contempt sanction usually imposed for violation of an injunction.[4] Protective orders, moreover, in addition to their characteristics as injunctions, also have attributes of prejudgment security devices, which generally have been expressly excluded from the definition of an injunction for appeal purposes and thus are subject to appeal only to the extent they fall within the *Cohen* collateral order doctrine. *See* WRIGHT, MILLER, COOPER, & GRESSMAN, 9 FEDERAL PRACTICE AND PROCEDURE: INTERLOCUTORY REVIEW § 3922 at 29; *Dameron*, 431 A.2d at 586. Indeed, the court in *Bell* noted the similarity between prejudgment attachment and garnishment orders and protective orders in landlord and tenant cases, all of which provide "advance assurance of the solvency of the defendant." *Bell*, 139 U.S. App.D.C. at 106, 430 F.2d at 479. *Bell*

---

4. In context, the striking of the tenant's pleadings may be more severe than some kinds of relief, such as a fine, ordered for contempt. *See Davis v. Rental Associates, Inc.*, 456 A.2d 820, 835 (D.C.1983) (en banc) (Newman, C.J., dissenting). On the other hand, imprisonment for contempt for continuing to violate an injunction would suggest, to some, a more severe remedy. The point is, the sanctions typically imposed for violating a protective order and an injunction, respectively, are not the same.

recognized, however, that the protective order, a unique judicial creation, is distinct from the ordinary prejudgment attachment, which is subject to strict statutory procedures. *Id.* at n. 10; *see* D.C.Code § 16–501 *et seq.* (1981). Because the protective order is a unique creation that is neither wholly an injunction nor truly a prejudgment security device—although it has attributes of both—we therefore believe we are constrained to rely on the *Carson* "practical effect" test for appealability of protective orders, if at all, under § 11–721.[5]

### (ii)

We turn to the second *Carson* criterion. The "serious, perhaps irreparable consequence" flowing from a protective order, as our caselaw has recognized, is the danger that a tenant may lose possession of the rental property. Because the normal sanction for failure to comply with a protective order is to strike the tenant's pleadings, *Mahdi v. Poretsky Management, Inc.*, 433 A.2d 1085 (D.C.1981), compliance with the protective order becomes a prerequisite, and thus a potential barrier, to the tenant's ability to maintain a defense against the landlord's suit for possession. As the court stated in *Bell*, "imposing on litigants who are eligible to proceed *in forma pauperis* the requirement that a defense may be maintained only upon payment of a given sum of money—whether this sum is characterized as a rental prepayment or an appeal bond—seems incongruous." *Bell*, 139 U.S.App.D.C. at 106, 430 F.2d at 479. Even for nonindigent tenants, there is a danger that the trial court may set the protective order too high (although limited to the original contract

rent or to a Rental Housing Commission-approved rent increase), that the tenant will not be able to pay the sum ordered, and that the tenant, in the absence of an opportunity for interlocutory appeal, will be deprived of his or her otherwise meritorious defenses to the landlord's suit. This is precisely the scenario alleged by the tenants in this case. The ultimate consequence, of course, is that a tenant may lose possession of the rental property notwithstanding such defenses, simply because the trial court has entered an unreasonable protective order with which the tenant could not comply. This danger is especially great since we have held, in *Davis*, 456 A.2d 820, that when the tenant has failed to comply with the protective order, the trial court may strike his or her pleadings without first considering whether the amount of the protective order may have been set too high.[6] *Id.* at 826.

It is precisely because the tenant may lose his or her home that an erroneous protective order generally cannot be "effectually challenged" on appeal of the merits of the possession action. The central issue in a landlord and tenant case is possession of the rental property. Should the tenant fail to comply with the protective order, have his or her pleadings struck, and thereafter lose possession of the property, "one could hardly vouch for the likelihood that the occupancy would be resumed even in the event of an ultimate merits victory...." *Cooks I*, 141 U.S.App.D.C. at 239 n. 7, 437 F.2d at 672 n. 7. As with the order in *Brandon*, therefore, the protective order typically threatens "a sufficiently serious injury to justify an immediate appeal." *Brandon*, 439 A.2d at 507.

---

5. It is well established that where a given order is of ambiguous identity, it is appropriate for the appellate court to categorize the order for purposes of granting or denying interlocutory appeal. *In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir.1985); *Inter-Regional Financial Group, Inc. v. Hashemi*, 562 F.2d 152 (2d Cir.1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 892, 54 L.Ed.2d 798 (1978). As the court stated in *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47 (1st Cir.1986), "The question of whether an interlocutory order which has the attributes of both an attachment and an injunction should be treated for appeal

purposes as an attachment or an injunction depends upon the terms of the order."

6. The pervasiveness of the protective order in landlord and tenant litigation, and the attendant harm such orders can cause, was highlighted recently when we approved the use of protective orders not only in suits for possession based upon nonpayment of rent but also in suits for possession based upon a notice to quit. *Cunningham v. Phoenix Management, Inc.*, 540 A.2d 1099 (D.C.1988).

### C.

But, is it enough to warrant an interlocutory appeal in every case under *Carson* and *Brandon* to say, merely, that the injury threatened by a protective order is "typically" serious if not irreparable? Under the circumstances we answer "Yes." Although potentially injurious consequences may or may not come about in a particular case, a protective order will always carry with it those dangers. There may be isolated cases, of course, in which the tenant has adequate resources that would render the consequence of an erroneous protective order less than "serious," let alone "irreparable," *Carson*, 450 U.S. at 84, 101 S.Ct. at 996 (citation omitted); but, we are convinced by our experience in reviewing landlord and tenant cases that, in the typical landlord's action for summary possession in Superior Court, a "serious, perhaps irreparable consequence" will almost always be threatened when the tenant is subject to a protective order, for the incomes of most tenants brought to court for alleged nonpayment of rent are marginal[7] and their defenses (based, for example, on alleged code violations) would be disallowed, without scrutiny, if they failed to comply with the protective order. Furthermore, protective orders as a class share the same attributes.

We accordingly conclude that, whether the worst-case scenario manifests itself or not, a protective order will always be appealable. Although *Carson* contemplates individualized review, that presupposes a uniqueness about each case that is simply not true of the many cases in the Landlord and Tenant Branch. We therefore reject the suggestion that the appealability of protective orders should be subject to a case-by-case analysis of the potential harm caused a particular litigant. Such an approach would usually mean that the appellate court would have to examine the merits of the underlying claim simply to determine whether the order in question is appealable. *See Dameron*, 431 A.2d at 584 n. 6. This would waste judicial resources and would inject an unnecessary element of uncertainty into landlord and tenant litigation.

We are aware, of course, that permitting interlocutory appeals from protective orders (and from orders with respect to protective orders) could impede the summary nature of the action for possession. *See Cunningham v. Phoenix Management, Inc.*, 540 A.2d 1099, 1101 (D.C.1988) ("With the advent of affirmative defenses and the right to trial by jury, landlord and tenant proceedings for possession are no longer as summary in nature as they previously had been."). We note, however, that although an appeal from the protective order divests the trial court of jurisdiction to revoke or alter the order itself, *DeFoe v. Weaver Brothers, Inc.*, 108 A.2d 94, 95 (D.C.1954), the trial court does not lose jurisdiction over the entire case. *Aurell v. Furst*, 539 A.2d 1081 (D.C.1988). The trial court may continue to act on the merits of the underlying action for possession, provided the protective order itself is not affected; "a party may seek disposition in the trial court of other matters which do not result in revocation or alteration of the judgment on appeal." *Padgett v. Padgett*, 478 A.2d 1098, 1100 (D.C.1984) (citing *DeFoe*, 108 A.2d at 95); *accord, Taylor v. First American Title Co.*, 509 A.2d 96, 97 (D.C.1986). It follows that, in the event this court were to deny a stay pending appeal of a protective order, the trial court would not be precluded from imposing appropriate sanctions for failure to comply with the protective order pending appeal.

The protective order is a unique judicial creation that has been developed and refined expressly as a tool to assist the trial court in maintaining the equipoise among the "variety of closely balanced legal and tactical approaches" available to litigants in landlord and tenant cases. *Dorfmann*, 134 U.S.App.D.C. at 278, 414 F.2d at 1174. Having placed this formidable tool in the hands of the trial court for use, routinely, on behalf of plaintiff-landlords, and having extended it from time to time primarily for the landlord's benefit, *see Davis, supra; Cunningham, supra,* it is appropriate that

---

**7.** *See Davis*, 456 A.2d at 831, 833 (Ferren, J., concurring in judgment).

we also assure tenant-defendants the right to interlocutory appeal from the protective order's potentially erroneous and damaging use. Accordingly, we are free to deem protective orders entered in the Landlord and Tenant Branch, by their very nature, to satisfy the *Carson/Brandon* test. We conclude that protective orders (and orders with respect to protective orders) are categorically appealable as orders with respect to injunctions under D.C.Code § 11–721(a)(2)(A) (1981).

The appeal in this case, therefore, is *ALLOWED.*