**Jerome W. LINDSEY, Appellant,**

v.

**Romualda Y. PRILLMAN, Appellee.**

**No. 06–CV–646.**

District of Columbia Court of Appeals.

Submitted March 20, 2007.

Decided April 19, 2007.

Vincent C. Uchendu, was on the brief for appellant.

Jesse A. Gadson, Washington, DC, was on the brief for appellee.

Before KRAMER and THOMPSON, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

In this case of a complaint for possession of real property, appellant Jerome Lindsey, Jr. asserts that the Landlord and Tenant Branch erred in failing to enter a protective order and in "refusing to grant plaintiff's request for an undertaking following the plea of title filed by defendant

as a defense to the action for possession." We affirm.[1]

## I.

On March 2, 2006, appellant filed a complaint seeking to recover possession of a residence located at 805 Rittenhouse Street, N.W. He alleged that he was the landlord of the premises and that the tenant, appellee Romualda Prillman, was holding the property without right. Appellant requested a judgment for possession, for rent and other fees, and for an order that all future rent be paid into the registry of the court until the case was decided.

On April 6, the parties appeared before Judge Hedge for a *Bell* hearing,[2] at which time Prillman filed an Answer and a Jury Demand. In her Answer, Prillman denied that she and appellant had a landlord-tenant arrangement and asserted as one of her defenses that she had "a valid and vested ownership interest in the property." Prillman later testified at the hearing that she had taken possession of the property in 2001. She further testified that she and appellant had "never had a landlord lease agreement"; rather, they had an agreement by which appellant would sell Prillman the house if she renovated it. More specifically, Prillman contended that appellant had agreed to let her live in the house in the expectation that, using her own money, she would "make it habitable pursuant to D.C.Code." Her attorney asserted

that by this arrangement, the parties intended for Prillman to improve the property to the point of qualifying for mortgage financing, and then she would be in a position to buy the property outright. Appellant confirmed that Prillman had been living in the property for five years and that the parties did not have a lease. He then presented the court with two checks from Prillman, both of which had bounced.

After hearing from both parties, the judge said: "I think there's a distinct problem with the case with respect to any request for a *Bell* hearing because it just strains credulity to think that for five years there'd be no suit brought prior to this time, that there had been a landlord-tenant relationship with two bounced checks. It makes no sense." The judge further stated that she did not "see any basis for a protective order" and certified the case to Civil II for trial. When appellant's counsel asked the judge to rule "on my request for an undertaking to be posted by the defendant on the plea of title," the judge replied, "Well, there's no plea of title. It's a contract. They aren't claiming a plea of title." On May 2, 2006, appellant filed a motion for reconsideration of the trial court's denial of his requests for a protective order and for the posting of an undertaking, which Judge Hedge denied. Thus, the trial judge credited Prillman's testimony that the parties contemplated a purchase, not a rental, of the property.

---

1. We have jurisdiction because this appeal is from an interlocutory order that qualifies as an order with respect to an injunction. D.C.Code § 11–721(a)(2)(A) (2001) ("The District of Columbia Court of Appeals has jurisdiction of appeals from ... (2) interlocutory orders of the Superior Court of the District of Columbia (A) ... refusing ... injunctions ...."); *see McQueen v. Lustine Realty Co., Inc.,* 547 A.2d 172 (D.C.1988) (en banc) ("orders with respect to protective orders ...

qualify as orders with respect to injunctions and are therefore appealable under D.C.Code § 11–721(a)(2)(A)."); *see also Penny v. Penny,* 565 A.2d 587, 590 (D.C.1989) ("Rule 5(c) undertaking orders are subject to appeal as orders with respect to injunctions under section 11–721(a)(2)(A).").

2. *Bell v. Tsintolas Realty Co.,* 139 U.S.App. D.C. 101, 430 F.2d 474 (1970).

## II.

■ Appellant argues, first, that the judge erred when she failed to enter a protective order. We review for abuse of discretion. *See Akassy v. William Penn Apartments Ltd. P'ship,* 891 A.2d 291, 308 (D.C.2006) (citing *Bell,* 139 U.S.App.D.C. at 110, 430 F.2d at 483). Under *Bell,* the Landlord and Tenant Branch has authority to enter a protective order in suits for possession of real estate based on nonpayment of rent. 139 U.S.App.D.C. at 106, 430 F.2d at 479. "[T]he protective order [in landlord and tenant cases] is a court command to the tenant to pay an amount in lieu of rent on a regular basis" into the court registry "and to refrain from withholding or delaying the required payments." *McQueen v. Lustine Realty,* 547 A.2d 172, 177 (D.C.1988).

■ Here, the judge determined that a protective order was not warranted because appellant had not demonstrated that this was a suit for possession based on nonpayment of rent. We believe that this ruling should stand. A "protective order ... is a judicial creation specifically tailored to the circumstances of summary proceedings in the Landlord and Tenant Branch...." *Id.* It is not a tool used for security in other contexts, such as those suitable for a bond or an "undertaking," where periodic payments are not the norm.[3] In this case, because appellant could not show that Prillman was required, by the terms of their arrangement, to make periodic rental payments, and thus

failed to prove the existence of a landlord-tenant relationship, the trial judge did not err, let alone abuse her discretion, in declining to enter the requested protective order. Although we decline to say that a periodic-payment protective order can never be contemplated for use outside the typical landlord-tenant context, we are in accord with Judge Hedge that such an order would not fit the rather unusual arrangement that the parties had made for Prillman's purchase of the house.

■ Anticipating that the court might not find a protective order appropriate under the circumstances, appellant proffered another security arrangement used when an alleged tenant claims ownership. He contends that the trial court erred in failing to order an "undertaking," *see supra* note 2, given Prillman's defense that she had "a valid and vested ownership interest in the property." Again, we review for abuse of discretion. *Turner v. Day,* 461 A.2d 697, 699 (D.C.1983). An "undertaking" is a form of bond "used when the defendant interposes a plea of title." *Id.* at 700. It "serves to assure compensation of the plaintiff not only for lost rent" during the period of litigation while the defendant occupies the premises "but also for the cloud on the title and related damages and costs." *Id.* Super. Ct. L & T R. 5(c) allows a trial judge "to approve the form and amount of the undertaking" once a defendant files a plea of title "in writing, under oath," along with an application for an undertaking. If a defen-

---

3. As to an undertaking, for example, Super. Ct. L & T R. 5(c) (2005) provides:

A defendant desiring to interpose a plea of title must file such plea in writing, under oath, accompanied by a certification that it is filed in good faith and not for the purpose of delay and must also file an application for an undertaking or for waiver of undertaking, the form and amount of any such undertaking to be approved by the Court.

Upon such approval by the Court, the undertaking shall be filed within 4 days thereafter and the case shall be certified to the Civil Division for trial on an expedited basis. Upon failure to so file the undertaking, the Clerk shall strike the plea of title unless the Court for good cause shown shall extend the time within which the undertaking may be filed.

dant fails to apply for an undertaking (unless waived), "the Clerk shall strike the plea of title unless the Court" grants an extension for good cause. Super. Ct. L & T R. 5(c). *See supra* note 2.

Here, although Prillman claimed in her answer to have a "vested ownership interest in the property," her testimony clarified that she was not asserting title to the property; rather, she was claiming an *opportunity* to obtain title pursuant to her contract with appellant, a contract contingent upon her ability to bring the house up to code and, hopefully, obtain financing. The trial judge accepted Prillman's characterization of the transaction, and accordingly, found no basis for imposing an undertaking on her. As the trial judge saw the matter at this preliminary stage of the proceeding, Prillman's claim to title was aspirational at best, without an obligation enforceable against her.

■■■ Appellant contends that Judge Hedge erred, nonetheless, in failing to order the requested undertaking because the doctrine of equitable conversion required her to find that Prillman's contract defense, in reality, was enough of a "plea of title" to trigger application of Rule 5(c). "Common law equitable conversion views a contract of sale as immediately vesting the purchaser with beneficial ownership of the realty, and limiting the property interest of the vendor to the promised consideration, . . . retaining legal title only as trustee for the purchaser until the deed of conveyance is delivered." *Trustee 1245 13th Street, NW # 608 Trust v. Anderson,*

905 A.2d 181, 184 (D.C.2006) (citation and internal quotation omitted). Under this doctrine, according to appellant, Prillman's contract defense qualifies her as an "equitable owner" of the title to the property, requiring the judge either to order an undertaking or to strike Prillman's contract defense.

Because appellant did not brief or otherwise argue equitable conversion in the trial court, and because in any event the facts here—reflecting an aspirational, contingent purchase—do not necessarily (if at all) suggest that an equitable conversion may have taken place, we cannot fault the trial judge for failing to consider it. Nor, as a result, are we obliged to consider it. *See Anderson,* 905 A.2d at 183 ("[A]rguments not raised in the trial court are ordinarily waived on appeal.") (citing *Wallace v. Skadden, Arps, Slate, Meagher & Flom LLP,* 799 A.2d 381, 388 (D.C.2002)).

■■■ In any event, appellant's argument fails as a matter of law. The doctrine applies only when the contract is both valid and enforceable. *See SMS Assocs. v. Clay,* 868 F.Supp. 337, 340 (D.D.C.1994) (setting forth prerequisites for doctrine of equitable conversion).[4] The doctrine is premised on the theory that, "[b]ecause parties to a real estate contract are able to obtain a decree ordering specific performance of their contract, they can under the doctrine [of equitable conversion] qualify as equitable owners of the title to the property . . . even before they bring an action for specific performance of the con-

---

4. According to a leading treatise:

In all equitable conversion situations, three prerequisites must be met. First, the contract must be valid. Second, the contract must be enforceable. Finally, the contract must affect real estate. Thus, an incomplete contract that has not become the final agreement of the parties does not involve an equitable conversion. Moreover, a con-

tract involving a precondition such as adequate financing approval for the purchaser or the prior sale of a residence by one of the parties is not a valid agreement until the precondition has been accomplished.

14 RICHARD R. POWELL & MICHAEL ALLAN WOLF, POWELL ON REAL PROPERTY § 81.03[1], at 81–85 (2000).

tract." *Id.* Here, however, it is uncertain whether Prillman could obtain a decree ordering specific performance, because the alleged (apparently oral) contract seems to have had unmet preconditions,[5] and "[a] purchaser seeking specific performance must show that he [is] ready, able and willing to perform the contract." *Flack v. Laster,* 417 A.2d 393, 400 (D.C.1980). In sum, because it is unclear whether the alleged contract is valid and enforceable, both preconditions to the doctrine of equitable conversion, the trial court did not err in failing, *sua sponte,* to apply that doctrine when asked to enter an undertaking before certifying the case to Civil II for trial.

*Affirmed.*

---

**5.** Although the record is not fully developed at this stage of the proceedings, it appears that there were contingencies assigned to Prillman, such as performing work to bring the property into compliance with building codes and obtaining financing, that had to be met before Prillman could enforce a claim of title.