**Andrena CROCKETT, Appellant,**

v.

**DEUTSCHE BANK NATIONAL TRUST, Appellee.**

No. 09–CV–1180.

District of Columbia Court of Appeals.

Submitted Nov. 12, 2010.

Decided March 31, 2011.

Andrena Crockett, pro se.

Carol S. Blumenthal and Edward J. Cordone, for appellee.

Before REID, KRAMER, and THOMPSON, Associate Judges.

KRAMER, Associate Judge:

Andrena Crockett appeals the trial court's entry of a non-redeemable judgment for possession and the striking of her pleadings as a sanction for non-payment of a protective order under Superior Court Landlord and Tenant Rule 12–I(g). We find no error and affirm.

Deutsche Bank National Trust (the Trust) foreclosed on Crockett's house in December of 2009. At the foreclosure sale, the Trust itself purchased the home. Subsequently, the Trust provided Crockett with thirty-days notice to quit, and after Crockett did not vacate the premises, filed suit for possession in the Landlord and Tenant Court. Crockett's answer alleged that she had not been provided a right to cure her mortgage default,[1] and that she was attempting to re-purchase the home.[2] The court entered a protective order requiring Crockett to pay $4,691 per month into the court registry, an amount which corresponded to her monthly mortgage payment. Crockett did not make any payments into the court registry, and as a sanction, the trial court entered a judgment for non-redeemable possession to the Trust. The trial court declined to modify its ruling after reconsideration. Crockett appeals, arguing that because the suit for possession was not a case involving non-payment of rent, Superior Court Landlord and Tenant Rule 12–I(g)(2)(B) prohibits the granting of possession as a sanction. For the reasons stated herein, we disagree, and affirm the order of the trial court.

We review the trial court's legal conclusions de novo. Matthews v. District of Columbia, 875 A.2d 650, 654 (D.C.2005). Superior Court Landlord and Tenant Rule 12–I(g) allows for the issuance of sanctions, including a grant of possession, where a party violates a protective order. However, Rule 12–I(g)(2)(B) provides:

> Cases without allegations of nonpayment of rent. The Court shall not enter a judgment for possession as a sanction for the defendant's failure to comply with a protective order in a case in

---

1. The record suggests that Crockett's answer was referring to a previous foreclosure sale, instituted by Fremont Investment and Loan, the originator of the mortgage, who later assigned the mortgage to the Trust. The Fremont sale was aborted when Crockett filed for bankruptcy. Crockett indicates, however, that she *did* receive a right to cure notice more than thirty-days prior to the foreclosure sale where the Trust purchased the home.

2. Though Crockett now argues that her answer should have been construed as a plea of title, the trial court did not construe it as such, her answer did not meet the procedural requirements of Superior Court Landlord and Tenant Rule 5, and we do not understand her argument to be that she actually owns the property. If Crockett had interposed a plea of title, the court would have ordered an undertaking which, if not paid by Crockett, would have led to the striking of her pleadings. *See* Super. Ct. L & T.R. 5(c).

which the plaintiff seeks the entry of a judgment for possession that is not subject to the defendant's right to redeem the tenancy and avoid eviction.

Thus, Crockett argues that because her case was without an allegation of nonpayment of rent, the trial court was not able to enter a judgment for possession as a sanction. The Trust argues, and the trial court held, that Rule 12–I(g)(2)(B) is inapposite because the Trust and Crockett never had a landlord-tenant relationship, and Rule 12–I(g)(2)(B) only applies to leasehold situations.

■■■ The parties and the trial court agreed that Crockett and the Trust never had a landlord-tenant relationship. "A landlord-tenant relationship does not arise by mere occupancy of the premises; absent an express or implied contractual agreement, with both privity of estate and privity of contract, the occupier is in adverse possession as a 'squatter.'" *Nicholas v. Howard*, 459 A.2d 1039, 1040 (D.C.1983) (citation omitted). Our law defines a "squatter" who is a mortgagor remaining in possession after a foreclosure sale as a "tenant at will." D.C.Code § 42–522. While the term "tenant" is used to define such status, that term itself does not create a contractual landlord-tenant relationship; it is used to allow property owners to avail themselves of the summary procedures of the Landlord and Tenant Branch. *Nicholas, supra*, 459 A.2d at 1040; *see also Taylor v. First Am. Title Co.*, 509 A.2d 96, 97 (D.C.1986) ("Assuming appellants were tenants at will after foreclosure, they were not in a contractual relationship with appellee, which purchased the property at foreclosure.").

We agree with the trial court's interpretation of Rule 12–I(g)(2)(B). Rule 12–I(g)(2)(B) prohibits the grant of possession as a sanction for violating a protective order where the parties have a contractual landlord-tenant relationship and there are no allegations of non-payment of rent; it does not prohibit the entry of a judgment for possession as a sanction where the parties do not have a contractual landlord-tenant relationship. The rule applies to proceedings where the *tenancy* is non-redeemable, which means that a tenant cannot redeem her *lease* by paying the rent due. By referencing redemption, the rule presupposes that the person in possession is in a contractual landlord-tenant relationship. *See Trans–Lux Radio City Corp. v. Serv. Parking Corp.*, 54 A.2d 144, 146 (D.C.Mun.App.1947) ("[A] court of law or equity may relieve a tenant from *forfeiture of his lease for nonpayment of rent* by permitting him … to pay the rent due.") (emphasis supplied). Properly understood, the rule applies to situations where a tenant is in violation of her lease for reasons *other* than non-payment of rent, for example, violating a no-pets clause or other covenant, and thus is unable to redeem her tenancy by paying the back rent. Thus, the rule cannot apply to a tenant at will who is a holdover mortgagor, because there is no lease at issue whatsoever, and no rent due from such a tenant at will.[3] *See Nicholas, supra*, 459 A.2d at 1041. Moreover, other sections of the rule explicitly apply to a relationship where rent is paid. Super. Ct. L & T.R. 12–I(a) ("If entered, the protective order shall require the defendant to deposit money into the

---

**3.** However, as *Nicholas* itself indicates, such a tenant at will is liable for the "use and occupancy value" of his possession after foreclosure. *Nicholas, supra*, 459 A.2d at 1040–41. Also, the situation of a mortgagor who holds over after foreclosure should be distinguished from that of a tenant of the mortgagor who holds over after foreclosure, as the latter may be entitled to a number of statutory protections under the Rental Housing Act. *See Banks v. Eastern Savings Bank*, 8 A.3d 1239 (D.C.2010).

court registry instead of paying rent directly to the plaintiff.").

We reached a similar conclusion when considering whether or not the protections of the Rental Accommodations Act applied to tenants at will who are holdover mortgagors. Holding that they did not, we wrote that

> [t]he primary fallacy in appellant's position is his contention that the statutes are *in pari materia* and that the term 'tenant' is defined consistently throughout the D.C.Code. The distinction here is between a tenant at common law—one who holds or possesses lands by any kind of right or title—and a tenant under the renters' statute—one who stands in a contractual relationship with his landlord.

*Simpson v. Jack Spicer Real Estate, Inc.,* 396 A.2d 212, 214 (D.C.1978) (citation omitted). The "tenancy" envisioned by Rule 12–I encompasses the latter, not the former, and Rule 12–I(g)(2)(B) does not prohibit the grant of possession as a sanction where the protective order was entered in a case lacking a contractual landlord-tenant relationship. Thus, we hold that the trial court did not err when granting the Trust's motion for possession.[4]

Of course, this begs the question why a protective order was entered in the first instance.[5] Protective orders, by their very nature, are designed to govern a contractual landlord-tenant relationship, and their utility is questionable when the litigants lack such a relationship. *See Lindsey, supra* note 5, 921 A.2d at 786 ("[T]he judge determined that a protective order was not warranted because appellant had not demonstrated that this was a suit for possession based on nonpayment of rent. We believe that this ruling should stand."); *Walker v. Smith,* 499 A.2d 446, 450 (D.C. 1985) ("Moreover, in the absence of the traditional landlord-tenant relationship, with privity of contract, the validity of [a] protective order is open to serious question."); *see generally Bell v. Tsintolas Realty Co.,* 139 U.S.App. D.C. 101, 430 F.2d 474, (1970) (describing the particular applicability of protective orders in the landlord-tenant context).

That said, we have left open the possibility that protective orders may be appropriate in some circumstances outside of the landlord-tenant context, and have occasion-

---

4. Crockett's other contentions lack merit. Crockett did not move for a reconsideration of the protective order, and the trial court properly conducted the required inquiry before issuing the judgment for possession as a sanction. Super. Ct. L. & T.R. 12–I(g); *see also Davis v. Rental Associates, Inc.,* 456 A.2d 820 (D.C.1983) (describing the requisite considerations before striking a pleading and granting judgment for possession as a sanction).

5. Below, both the Trust and the trial court indicated that if the payments ordered by the court were not a protective order, they could be viewed as an undertaking under Rule 5(c). However, as the Trust concedes, Crockett did not ever make a plea of title, which would have required an undertaking. Absent a proper plea of title, we do not see how the trial court *could* have ordered an undertak-

ing. *Penny v. Penny,* 565 A.2d 587, 589 (D.C. 1989) ("[A] ... protective order is an equitable device of the court whereas a 'Rule 5(c)' undertaking order is statutorily authorized."). Moreover, to the extent the Trust or the trial court assumed there was no legal defense to an action for post-foreclosure possession that would not rise to a plea of title, they were mistaken. *See Lindsey v. Prillman,* 921 A.2d 782, 786 (D.C.2007) (finding that the trial court did not abuse its discretion by declining to order either a protective order or an undertaking where the person in possession merely alleged a contractual opportunity to purchase); *Mahoney v. Campbell,* 209 A.2d 791, 794 (D.C.1965) (holding that a plea of title was not interposed where the person in possession answered that the party suing for possession was not the established owner of the premises).

ally implicitly endorsed them. *Lindsey, supra* note 5, 921 A.2d at 785 ("[W]e decline to say that a periodic-payment protective order can never be contemplated for use outside the typical landlord-tenant context."); *Taylor v. First Am. Title Co.*, 477 A.2d 227 (D.C.1984) (upholding the striking of a plea where the tenants at will after foreclosure failed to make payments on either an undertaking or a protective order), *overruled on other grounds by McQueen v. Lustine Realty Co.*, 547 A.2d 172, 175 (D.C.1988).

Crockett, for the first time on appeal, assigns error to the initial entry of the protective order, but has not provided a record sufficient to evaluate the exercise of the trial court's discretion.[6] Crockett did not provide transcripts from the hearing where the order was entered;[7] her appeal only notes the order granting possession to the Trust, and at the sanctions hearings (transcripts of which Crockett did provide) she did not object to the entry of the order, only to the subsequent grant of possession. Even mindful that Crockett is proceeding *pro se*, we are unable to assess the initial entry of the protective order both because the point is raised for the first time on appeal, and because we have no record by which to evaluate the trial court's exercise of discretion.[8] *See Wallace v. Skadden, Arps, Slate, Meagher & Flom LLP*, 799 A.2d 381, 388 (D.C.2002) (arguments not raised below are normally

spurned on appeal); *Van Durr v. Kator & Scott, Chartered*, 788 A.2d 579, 580–81 (D.C.2002) (holding that this court was unable to reach alleged errors where *pro se* appellant did not provide an adequate record); *Williams v. Dudley Trust Found.*, 675 A.2d 45, 55 (D.C.1996) (finding that the court was unable to disturb the setting of an undertaking where the appellant failed to provide an adequate record); *Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 112 (D.C.1982) ("Appellate review is limited to matters appearing in the record before us.") (citation omitted).

Ultimately, we affirm because once the protective order was entered, Rule 12–I(g)(2)(B) did not prohibit the court from exercising its discretion to strike the pleadings and grant possession, *see Davis, supra*, 456 A.2d at 826, and as presented, we are unable to review the initial entry of the protective order. Further, we note that because the landlord-tenant proceeding did not decide title on the merits, *see* D.C.Code § 16–1505; *Turner v. Day*, 461 A.2d 697, 699–700 (D.C.1983), Crockett is not precluded from filing a claim for wrongful foreclosure stemming from the alleged failure to provide an opportunity to cure or other irregularities.

*Affirmed.*

---

**6.** Crockett does not argue that the trial court was prohibited, as a matter of law, from entering a protective order.

**7.** The Trust's brief indicates that when the protective order was entered, Crockett disputed the *amount* of the protective order. We also note that Crockett did not immediately appeal the protective order, as she was entitled to do. *See McQueen, supra*, 547 A.2d at 180 (finding protective orders immediately appealable).

**8.** Crockett argues that the trial court abused its discretion because the $4,691 per month protective order did not accurately reflect the value of the home, because her subprime mortgage interest rate was extremely high. If true, Crockett's argument would have merit, given that the only conceivable reason to enter a protective order in this instance would be to protect the Trust's interest in the value of the use and occupation of the home during the pendency of litigation. *See generally Bell, supra*, 139 U.S.App. D.C. at 112, 430 F.2d at 485.