**B.F. SAUL CO., Appellant,**

v.

**Wendy TIEFENBACHER,
et al., Appellees.**

No. 11–CV–565.

District of Columbia Court of Appeals.

Decided Sept. 22, 2011.

Richard W. Luchs, and Joshua M. Greenberg, and Debra F. Leege, Washington, DC, were on the brief, for appellant.

Kenneth A. Mazzer, and Wendy Tiefenbacher, pro se.

Before GLICKMAN and OBERLY, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

This matter is before a motions division on the appeal of B.F. Saul Co. (BFSC), agent for the landlord, from an order of the Superior Court denying its motion to release funds, *pendente lite,* paid into the registry of the trial court by appellees, Kenneth A. Mazzer and Wendy Tiefenbacher (tenants). BFSC asserts that the trial court's order is interlocutorily appealable pursuant to D.C.Code § 11–721(a)(2) (2011 Supp.), and because it has the "practical effect" of an injunction pursuant to *McQueen v. Lustine Realty Co.,* 547 A.2d 172, 176 (D.C.1988) (en banc). We conclude that neither D.C.Code § 11–721(a)(2) nor *McQueen* supports this contention. Indeed, the pertinent authorities are to the contrary. Thus, we hold that we lack jurisdiction over this appeal and dismiss it.

I.

On June 21, 2006, BFSC instituted the underlying action against tenants for, *inter alia,* possession of a residential apartment in the Kennedy Warren Apartments,

premised upon tenants' non-payment of rent. The trial court later stayed the action and issued a protective order requiring that tenants make monthly payments into the court registry. Following a subsequent dismissal of claims made by tenants against BFSC before the Office of Administrative Hearings, BFSC moved to release the funds from the court registry. At an April 4, 2011 hearing, the trial judge orally denied this motion, noting that the underlying matter was still pending as tenants appealed the denial of their claims to the Rental Housing Commission.

On May 3, 2011, BFSC petitioned this court for interlocutory review of the trial judge's refusal to release the funds. This court, *sua sponte*, issued an Order to Show Cause why this appeal should not be dismissed as being taken from a non-appealable order.

## II.

■ BFSC contends this appeal is properly before us. It first cites to D.C.Code § 11–721(a)(2), which vests this court with appellate jurisdiction to review interlocutory orders that refuse "to dissolve or modify injunctions[.]"[1] Secondly, BFSC contends the order is an appealable interlocutory order pursuant to *McQueen, supra*, 547 A.2d at 176 and its progeny.[2]

This is a case of first impression. Never before have we decided whether a *pendente lite* order, entered in the exercise of the trial court's discretion, denying a landlord's motion to withdraw funds deposited in the registry of the trial court pursuant

1. In a footnote to this claimed authority, BFSC asserts that the trial court's "denial of BFSC's request for release of funds ... is effectively and (sic) injunction." It cites no authority for this legal assertion.

2. The progeny BFSC cites are *Graham v. Lanier Assocs.*, 19 A.3d 361 (D.C.2011), *Lindsey v. Prillman*, 921 A.2d 782 (D.C.2007), and

to a protective order in a suit for possession of residential real estate is an interlocutorily appealable order.

In *McQueen, supra*, 547 A.2d at 173, the en banc court was presented with the question whether a *tenant* who had been ordered to make "protective payments" into the registry of the court during the pendency of a suit for possession could take an interlocutory appeal from such an order. Judge Ferren, writing for the unanimous en banc court, acknowledged the conflict in our prior decisions: *Dameron v. Capitol House Assocs. Ltd. Partnership*, 431 A.2d 580 (D.C.1981) (holding tenants could not interlocutorily appeal a protective order), and *Taylor v. First Am. Title Co.*, 477 A.2d 227 (D.C.1984) (holding such an order subject to interlocutory appeal by the tenants under the "collateral order" test of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).

While explicitly declining to resolve the conflict between them or to follow either *Dameron* or *Taylor*, "we conclude[d] that [the] protective order ha[d] the 'practical effect' of an injunction under *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)" and thus was an interlocutorily appealable order. *McQueen, supra*, 547 A.2d at 174.

In *Carson, supra*, 450 U.S. at 84, 101 S.Ct. 993, when construing the federal jurisdictional statute codified at 28 U.S.C. § 1292 (2010),[3] Justice Brennan, speaking for a unanimous Court, said:

*LaPrade v. Liebler*, 614 A.2d 546 (D.C.1992). Neither of these cases is germane to resolution of the issue of our jurisdiction in this case.

3. We concluded in *Brandon v. Hines*, 439 A.2d 496, 509 (D.C.1981), that:

Although the language of the federal appellate jurisdictional statute, 28 U.S.C.

For an interlocutory order to be immediately appealable under § 1292(a)(1), ... a litigant must show more than that the order has the practical effect of refusing an injunction. Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger,* [348 U.S. 176,] 181 [75 S.Ct. 249, 99 L.Ed. 233] (1955). Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

*Id.*

The *Carson* test thus has two prongs. First the order at issue must have the practical effect of "refusing" (or granting) an injunction. Second, a litigant must show that the order might have "a serious, perhaps irreparable, consequence" that can only be effectually challenged by an interlocutory appeal. *Id.*

In *McQueen, supra,* 547 A.2d at 176–77, we recognized that protective orders are a "unique remedy" and are not simply "injunctions appealable for purposes of § 11–721." We specifically noted the differ-

ences between protective orders in landlord and tenant proceedings and traditional injunctions. Among those we referred to are: (1) that protective orders are not treated by the Landlord and Tenant Branch in accordance with the procedural strictures required for injunctions by Super. Ct. Civ. R. 65; (2) that the remedies for breach of protective orders are quite different from sanctions for violations of injunctions, and; (3) that protective orders substantially partake of the attributes of prejudgment security. *Id.* at 177.

With those principles in mind, we concluded in *McQueen* that the tenant satisfied the "practical effect" test enunciated by *Carson,* which was adopted by us in *Brandon, supra,* 439 A.2d at 509. We held that "protective orders entered in summary actions for possession in landlord and tenant proceedings satisfy, for appeal purposes, both prongs of the *Carson* 'practical effect' test." *McQueen, supra,* 547 A.2d at 176. However, we were at pains to point out that we were referring to the "practical effect" on the tenant, in the risk that "the tenant may lose his or her home [from] an erroneous protective order [that could not] be 'effectually challenged' on appeal of the merits of the possessory action." *Id.* at 178.

Further, we said:

we are convinced by our experience in reviewing landlord and tenant cases that, in the typical landlord's action for summary possession in Superior Court, a "serious, perhaps irreparable consequence" will almost always be threatened when the tenant is subject to a protective order, for the incomes of most

§§ 1291–92 (1976), is slightly different from the language of our own jurisdictional statute, D.C.Code 1973, § 11–721, ... "this Court has generally treated the two statutes in a similar fashion." *United States v. Harrod,* D.C.App., 428 A.2d 30, 31 n. 1 (1981)

(en banc). We find the Supreme Court's interpretation of the federal interlocutory appeals statute in *Carson, supra,* persuasive authority for our interpretation of the virtually identical language of D.C.Code 1973, § 11–721(a)(2)(A).

tenants brought to court for alleged non-payment of rent are marginal and their defenses (based, for example, on alleged code violations) would be disallowed, without scrutiny, if they failed to comply with the protective order. Furthermore, protective orders as a class share the same attributes.

*Id.* at 179 (footnote omitted).

We concluded:

The protective order is a unique judicial creation that has been developed and refined expressly as a tool to assist the trial court in maintaining the equipoise among the "variety of closely balanced legal and tactical approaches" available to litigants in landlord and tenant cases. *Dorfmann* [*v. Boozer*], 134 U.S.App.[D.C. 272,] 278, 414 F.2d [1168,] 1174 [ (1969) ]. Having placed this formidable tool in the hands of the trial court for use, routinely, on behalf of plaintiff-landlords, and having extended it from time to time primarily for the landlord's benefit, *see Davis* [*v. Rental Assocs., Inc.*, 456 A.2d 820 (D.C.1983) (en banc) ]; *Cunningham* [*v. Phoenix Mgmt., Inc.*, 540 A.2d 1099 (D.C.1988) ], it is appropriate that we also assure tenant-defendants the right to interlocutory appeal from the protective order's potentially erroneous and damaging use.

*Id.* at 179–80.

■ Protective orders are to be issued in the trial court in exercise of the court's equitable jurisdiction, *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970); they require the trial court to exercise discretion. *See Johnson v. United States*, 398 A.2d 354 (D.C.1979). As we stated in *McQueen:*

"[W]e have previously viewed the struggle between tenants and landlords as involving 'a variety of closely balanced legal and tactical approaches,'" and that the protective order "carries a substantial risk of upsetting the precarious balance of tactics in landlord-tenant litigation...." [*Bell, supra,* 139 U.S.App. D.C.] at 107–08, 430 F.2d at 480–81 (quoting *Dorfmann v. Boozer,* 134 U.S.App.D.C. 272, 278, 414 F.2d 1168, 1174 (1969)). In recognition of the hardship such orders potentially could cause tenant-litigants, ... "such prepayment is not favored and should be ordered only in limited circumstances, only on motion of the landlord, and only after notice and opportunity for hearing on such a motion."

*McQueen, supra,* 547 A.2d at 174 (alteration in original).

BFSC summarily argues that because the class of tenants are given the right to interlocutorily appeal a grant of a protective order, the class of landlords should likewise have the right to appeal a discretionary ruling refusing to modify a protective order to direct a pay out from the court registry. However, BFSC makes no attempt to show how a refusal to make such a pay out "may have a 'serious, perhaps irreparable, consequence,'" to landlords, as a class, so that it could only be "effectually challenged" by immediate appeal. *Carson, supra,* 450 U.S. at 84, 101 S.Ct. 993. BFSC thus fails to satisfy the two-prong test, as enunciated in *Carson* and applied in *Brandon* and *McQueen.*

We need not, and do not, decide whether or not BFSC can satisfy the stringent requirements of *Carson* and *McQueen* as an individual landlord.[4] That might be an

4. *See Hagner Mgmt. Corp. v. Lawson,* 534 A.2d 343, 345 (D.C.1987) (concluding that we lacked jurisdiction to review a landlord's interlocutory appeal from the trial court's stay of the underlying action because the landlord, as an individual, did not "support a claim that [it] would suffer serious injury if no appeal were allowed"). Likewise, we need not

issue for another case, on another appeal, on another day. However, it is not before us in this case.

*Appeal Dismissed for Lack of Jurisdiction.*

OBERLY, Associate Judge, concurring.

I join in the result reached by the court in this case, holding that the landlord's appeal from the trial court's refusal to modify its order so as to release funds that the tenants are paying into the court registry while the underlying matter is still pending before the Rental Housing Commission must be dismissed for lack of appellate jurisdiction. I agree with the majority that landlords must satisfy the same two-part test established for tenants in *McQueen v. Lustine Realty Co.*, 547 A.2d 172 (D.C.1988) (en banc), which requires tenants seeking review to show that absent an interlocutory appeal they will suffer "serious, perhaps irreparable, consequence[s]," and that the order sought to be appealed can be "effectually challenged" only by immediate appeal. *Id.* at 176 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). I also agree with the majority that B.F. Saul has not made that showing on behalf of landlords as a class.

I write separately, however, to emphasize what I believe the court is *not* deciding in this opinion. Specifically, I believe it is open to B.F. Saul (or any other individual landlord) to attempt to show, perhaps in a new filing in this suit or perhaps in another suit, "serious, perhaps irreparable, consequence[s]" from the failure to modify a protective order that can only be "effectually challenged" by immediate appeal. At some point—and one might wonder whether the more than five years the proposed rent increase in this case has

been under consideration by the Rental Accommodations and Conversion Division of the District of Columbia Department of Consumer and Regulatory Affairs does not reach that point—the pendency of unresolved administrative action surely may visit "serious, perhaps irreparable, consequence[s]" upon a landlord that can only be "effectually challenged" by immediate appeal. Certainly, the length of time this matter has been pending suggests a threat to the landlord's statutory entitlement to a maximum 12% rate of return on investment. D.C.Code § 42–3502.12(a) (2001); *see also Graham v. Lanier Assocs.*, 19 A.3d 361, 363 (D.C.2011). At some point, the piling up in the court registry of tens or hundreds of thousands of dollars indisputably owed to the landlord, out of all proportion to what is in dispute (here, an $81 per month rent increase), until a swamped and perhaps bureaucratic administration finally resolves a tenant's challenge ought to be reviewable in this court.

consider the implications of BFSC's status as an agent rather than an owner.